T.C. Memo. 2009-137


UNITED STATES TAX COURT


STEVEN M. MCDANIEL, Petitioner,
AND DANIELLE AZCONA, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 24702-06.                Filed June 15, 2009.


Paul M. Kohlhoff, for petitioner.

Danielle Azcona, pro se.

Julie A. Jebe, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GOLDBERG, Special Trial Judge: Respondent assessed deficiencies in Federal income tax of $10,455 and $14,700 for 2002 and 2003, respectively, against Steven M. McDaniel (petitioner) and Danielle Azcona (intervenor) based on their

joint Federal income tax returns. Petitioner applied to the Internal Revenue Service (IRS) for relief from joint and several liability, commonly called innocent spouse relief. After receiving no response and waiting the requisite period petitioner filed a stand-alone petition with this Court.[1] After the petition was filed and before trial respondent stipulated that petitioner is entitled to full innocent spouse relief under section 6015(c).

The petition also included a claim for abatement of interest under section 6404(e). Respondent moved to dismiss petitioner's interest abatement request on the ground that the Court lacks jurisdiction because petitioner had not applied for abatement of interest and the IRS had not issued a determination denying an abatement request. Petitioner replied that he did not oppose the motion, because respondent had stipulated that he owed no tax and therefore he owed no interest.

Because intervenor appeared at the trial and opposed the innocent spouse relief, the issues for decision are: (1) Whether under section 6015(c) petitioner is entitled to relief from joint and several liability for 2002 and 2003; and (2) whether we should grant respondent's motion to dismiss for lack of

---

[1]A stand-alone petition in this context means that petitioner requested relief from joint and several liability and did not also request a redetermination of the deficiencies.

jurisdiction regarding petitioner's section 6404(e) interest abatement request.

Unless otherwise indicated all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure. All amounts are rounded to the nearest dollar.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Indiana at the time he filed his petition.

After graduating from high school in 1990 petitioner attended vocational school and worked at several jobs. Around 1993 petitioner met intervenor, the sister of a friend, while intervenor was a student at Indiana University (I.U.). Petitioner and intervenor lived together for 7 of the next 9 years. In 1994 he began working for United States Steel Corp. (U.S. Steel) at its mill in Gary, Indiana. As of trial he continued to work for U.S. Steel as an ironworker, specifically as a safety representative.

Intervenor graduated from I.U. with dual majors in business and computer science. In 2000 she began working for Small Business Transportation, Inc. (SBT). Intervenor quickly moved into sales and was a full-time sales representative during the 2

years in issue. SBT is an independent third-party logistics service provider whose principal business is buying cargo space in bulk from regional, national, and international transportation carriers and reselling the space to small and medium-sized businesses that ship goods infrequently or in limited quantities.

Petitioner and intervenor married on October 6, 2001, in Indiana. The marriage quickly experienced problems and ultimately was short lived. Intervenor left the marital home in Indiana and moved with her furniture to Florida in May 2002. Petitioner filed for divorce, but the couple reconciled; and intervenor moved back with him in September 2002. The reconciliation did not last, and petitioner moved out for good in January or February 2004. Intervenor filed for a no-fault divorce, which petitioner did not contest. After Indiana's statutory 6-month waiting period had passed, the divorce became final in August or September 2004. Petitioner and intervenor had no children.

During the first 6 months of their marriage they tried to maintain a joint checking account, but disputes ensued; and for the rest of the marriage they maintained separate checking and savings accounts at separate banks. They had their paychecks deposited directly into their separate accounts. They also maintained separate credit cards and independently paid their own credit card bills.

From an inheritance he had received about 15 or 20 years earlier from his grandmother petitioner provided either $70,000 or $100,000 to purchase the lot and to begin construction on their home. He also used the proceeds from a bank construction loan to complete the construction. Petitioner built most of the home himself. Intervenor contributed about $25,000 toward furniture. The couple finished the basement and added a deck to the back of the house. The record does not clarify petitioner's and intervenor's testimonial disagreement as to whether intervenor paid all the monthly mortgage payments of $1,301 or they evenly divided the monthly payments.

They ate out for many of their meals, and, depending on the timing of their paydays, one or the other would pay the check. Similarly, they shopped and paid for groceries separately.

In 2003 petitioner leased and made the payments of $400 a month on a Dodge Ram truck worth $35,000. Petitioner also financed the purchase of a custom Titan motorcycle worth $28,000. Intervenor helped on the downpayment, but petitioner made the monthly payments. Additionally, petitioner financed a four-wheel ATV worth $10,000 on which intervenor helped with the monthly payments. Petitioner paid for the insurance on all of his vehicles. Intervenor similarly leased, made the monthly lease payments on, and paid for the insurance on a vehicle which she used for her work with SBT and for her own recreation vehicle.

For the years in issue petitioner received Forms W-2, Wage and Tax Statement, from U.S. Steel reporting $47,277 and $51,999 in wages for 2002 and 2003, respectively.

Intervenor, on the other hand, received distinct Forms W-2 and Forms 1099-MISC, Miscellaneous Income, from SBT reporting wages of $25,117 and $35,526 for 2002 and 2003, respectively, and independent contractor payments to her of $50,831 and $65,939 for 2002 and 2003, respectively. SBT's purpose in issuing separate forms was to make it easier for intervenor to report her business expenses related to her sales activity. During a subsequent IRS examination the revenue agent considered the issue of intervenor's independent contractor versus employee status but decided not to pursue the matter because "the tax effect was not substantial." In 2003 intervenor also started from her home her own transportation logistics company called Maximum Logistics.

Petitioner had no involvement in intervenor's businesses. He did attend one SBT-related business trip with her to Las Vegas. Except for an SBT-sponsored social dinner on the first evening, petitioner did not attend any of the business meetings or company functions. He met some friends and spent the days with them or gambled or relaxed by the pool while intervenor was conducting business. SBT did not require petitioner to attend the business trip, and petitioner paid for his own airplane ticket and meals.

Despite the separations and the marital difficulties, the couple filed joint Federal income tax returns for 2002 and 2003. At the suggestion of a relative of intervenor they went to Doris Tax Service in Kouts, Indiana, for help in preparing their returns for both years. The tax preparer worked in an office converted from her garage.

We take judicial notice that on November 14, 2008, the U.S. District Court for the Northern District of Indiana in United States v. Stowers, docket No. 07-CR-00173 sentenced Doris Stowers of Doris Tax Service in Kouts, Indiana, to imprisonment for up to 24 months for one count of "assisting in the preparation of a false United States individual income tax return in violation of Title 26, United States Code, Section 7206(2)." The indictment shows that for years 2002 and 2003 (the years at issue here) Ms. Stowers willfully advised clients to claim false deductions on their Federal income tax returns for charitable contributions, educational credits and expenses, medical expenses, miscellaneous expenses, and job expenses.

In regard to their returns for 2002 and 2003 intervenor and petitioner both attended the annual meetings with the tax preparer, but each met separately with the preparer and presented his or her own forms and expense receipts while the other sat on a couch nearby reading magazines. Petitioner spent about 10 to 15 minutes each year with the preparer while intervenor annually

spent about an hour.  For 2003 they also brought petitioner's mother, who conversed with petitioner while intervenor discussed her expenses with the preparer.

Intervenor deducted a total of $34,408 and $48,781 in business expenses on Schedules C, Profit or Loss From Business, for 2002 and 2003, respectively, pertaining to her business activities.  The categories of expenses that made up these amounts were car and truck expenses, meals and entertainment, repairs and maintenance, travel, and other business expenses.

Additionally, in both years their joint Federal income tax returns reflected deductions on Schedule A, Itemized Deductions, for State and local income taxes, real estate taxes, mortgage interest, noncash and cash charitable contributions, and miscellaneous expenses.

The tax preparer electronically filed the couple's returns and arranged for direct deposit of the refunds into intervenor's personal bank account.  The refund for 2002 was $1,064, and the refund for 2003 was $1,072.

In May 2005 after the couple had divorced, the IRS selected their joint 2002 and 2003 Federal income tax returns for audit. Petitioner and intervenor attended the audits separately.

The revenue agent made disallowances to three categories of deductions on the 2002 and 2003 returns.  The first category was intervenor's business expenses.  At the audit intevenor was able

to produce only a few receipts for her 2002 business expenses and none for 2003. Respondent disallowed $19,153 or 56 percent of intervenor's business expense deductions for 2002. Because intervenor lacked documentation for her business expense deductions for 2003, the revenue agent looked to 2002 to determine an estimate. The business expenses that the revenue agent allowed for 2002 amounted to 30 percent of intervenor's 2002 total business receipts. As a result the revenue agent allowed the same 30 percent for 2003, resulting in a disallowance of $28,999 or 59 percent of intervenor's 2003 business expense deductions.

The second set of disallowances was to the noncash and cash charitable contributions. With regard to the noncash charitable contributions intervenor had donated items to Goodwill. Intervenor deducted $4,537 and $3,267 in noncash charitable contributions for 2002 and 2003. On the basis of intervenor's substantiation respondent disallowed $603 and $777 for 2002 and 2003, respectively.

Regarding the cash charitable contributions, for 2002 respondent allowed only $10 of the $6,585 deduction, and for 2003 respondent allowed only $50 of the $7,585 deduction. The record's only discussion of the cash contributions was the revenue agent's adjustment report, which stated that for

contributions "the amounts claimed on the return were overstated and have been allowed as adequately verified."

Third, the revenue agent disallowed miscellaneous itemized deductions totaling $4,350 for 2002 and $8,068 for 2003. The record does not identify the expenses for which these disallowed deductions were claimed. However, none of the amounts that petitioner claimed as miscellaneous itemized deductions for union dues and specialized work clothing was disallowed.

Intervenor conceded the examination changes that the revenue agent proposed and agreed to an immediate assessment of the Federal income tax deficiencies of $10,455 and $14,700 for 2002 and 2003, respectively. Respondent therefore did not issue her a notice of deficiency.

Conversely, petitioner contested the examination changes. After the audit petitioner filed a Form 8857, Request for Innocent Spouse Relief, dated November 3, 2005, seeking relief from joint and several liability for 2002 and 2003 under section 6015(c).

The IRS sent a notice of deficiency dated January 11, 2006, to petitioner determining the above-mentioned income tax deficiencies of $10,455 and $14,700 for 2002 and 2003, respectively, arising from the same disallowances that the revenue agent proposed. Petitioner did not petition the Court

for a redetermination of the deficiencies; consequently, respondent assessed them.

On December 4, 2006, after waiting 13 months and still not receiving a response from the IRS to his application for innocent spouse relief, petitioner filed a stand-alone petition with this Court for relief from joint and several liability under section 6015(c).  As noted above petitioner also included requests in the petition for abatement of interest for 2002 and 2003 under section 6404(e).  Respondent notified intervenor of petitioner's requests for relief, and intervenor filed a notice of intervention on June 15, 2007.

The Court set a trial date for the trial session commencing February 28, 2008, in Chicago, Illinois.  In the interim, petitioner and his attorney discussed the request for relief with respondent.  Intervenor similarly engaged in correspondence and telephone conversations with respondent indicating that she opposed relief.  On January 9, 2008, about 7 weeks before trial, respondent entered into a settlement agreement with petitioner in the form of a brief stipulation of settled issues conceding that "no income tax is due from petitioner after application of Internal Revenue Code [section] 6015(c)."

When the case was called from the calendar, respondent and petitioner's attorney appeared, as did intervenor.  However, on advice of his attorney petitioner did not appear.  The Court

began the trial receiving intervenor's testimony and permitting cross-examination.

The Court continued the trial the next day to allow petitioner to be heard; but because the mother of petitioner's attorney died overnight, the attorney could not appear. The Court set the case for further trial via video conference at a special session on May 28, 2008, commencing at 10 a.m. eastern time in the electronic courtroom connected to the Tax Court building in Washington, D.C.

When the case was called at 10 a.m. on May 28, 2008, respondent's counsel, petitioner, and his attorney appeared via the live video conference from Chicago; however, intervenor did not appear. The Court heard petitioner's testimony and, since intervenor did not appear, closed the record. Intervenor appeared later at the video conferencing site in Chicago claiming that she had erroneously thought that the trial was to begin at 10 a.m. central time. Intervenor did not move to reopen the record.

As noted above respondent then moved to dismiss petitioner's section 6404(e) interest abatement requests for 2002 and 2003 for lack of jurisdiction. Petitioner replied but did not oppose the motion because of the stipulation granting relief. The Court took the motion under advisement.

OPINION

I. Jurisdiction

Usually our jurisdiction in an innocent spouse case is founded on a notice of determination denying a requesting spouse's application for relief. Sec. 6015(e)(1)(A)(i)(I). In this case, even though petitioner never received a notice of determination we have jurisdiction under section 6015(e)(1)(A)(i)(II) because petitioner filed his petition more than 6 months after applying to the IRS for section 6015 relief.

II. Burden of Proof

The spouse requesting relief normally bears the burden of proof in section 6015 cases. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004). However, section 6015(c) specifically provides that the Secretary bears the burden of proving that a spouse electing relief had actual knowledge at the time of signing the return of any item giving rise to the deficiency in joint tax. King v. Commissioner, 116 T.C. 198, 204 (2001); sec. 1.6015-3(c)(2), Income Tax Regs.

At both parts of the trial respondent conducted minimal cross-examination and presented no evidence to show that petitioner had actual knowledge of the facts underlying the disallowed deductions. Petitioner disclaimed any actual

knowledge of the facts that caused those deductions to be disallowed.

Intervenor has stepped forward to oppose the section 6015 relief which respondent had stipulated. In a similar section 6015(c) case where an intervenor appeared to oppose stipulated relief we weighed the evidence by using the preponderance of the evidence standard. See Stergios v. Commissioner, T.C. Memo. 2009-15. Similarly, we will inquire whether actual knowledge has been established by a preponderance of the evidence.

III. Standard of Review

Intervenor was not a party to the stipulation. Furthermore, section 6015(e)(4) provides the nonelecting spouse a right to be heard in judicial proceedings. Corson v. Commissioner, 114 T.C. 354, 365 (2000). Additionally, "we have always applied a de novo scope and standard of review in determining whether relief is warranted under subsections (b) and (c) of section 6015." Porter v. Commissioner, 132 T.C. __, __ (2009) (slip op. at 11). For the foregoing reasons we will review the record de novo.

IV. Overview of Statutory Relief From Joint and Several Liability

When a husband and wife file a joint return their liability is normally joint and several with respect to any tax they show on the return and to any tax the Commissioner finds to be owing. Sec. 6013(d)(3). However, section 6015 provides three avenues of relief from joint and several liability: (1) Section 6015(b)

permits relief if the requesting spouse establishes that in signing the return he "did not know, and had no reason to know" of the items that caused the understatement of tax; (2) section 6015(c) allows a separated or divorced spouse to request an allocation of liability if the requesting spouse did not have "actual knowledge" of the items giving rise to the understatement of tax; and (3) section 6015(f) allows the IRS or the Court to confer equitable relief depending on the particular facts and circumstances but only in situations where relief under section 6015(b) and (c) is not available.  See King v. Commissioner, 115 T.C. 118, 121 (2000).

V.   Two Prerequisites for Relief Under Section 6015(c)

Section 6015(c) is the avenue of relief that petitioner chose and as discussed below is the one that best fits his situation.  Under section 6015(c) the requesting spouse elects to be treated as if he had filed a separate return, thereby limiting his tax liability to that portion of the deficiency properly allocable to him.  Rowe v. Commissioner, T.C. Memo. 2001-325.

To be eligible for relief under section 6015(c) the electing spouse must satisfy the following two pertinent conditions as of the time of the election.  First, he must no longer be married to, must be legally separated from, or must have lived for the entirety of the preceding 12-month period in a different household from the individual with whom he filed the joint

return.  Sec. 6015(c)(3)(A).  Second, he must have made the election no later than 2 years after the date on which the collection activity began.  Sec. 6015(c)(3)(B).

Petitioner satisfies these two conditions.  The divorce was finalized in August or September 2004.  Thus he was no longer married to intervenor on November 3, 2005, the date on which he filed Form 8857 applying for relief.  Likewise, respondent had not commenced collection activity by November 3, 2005, the date when petitioner had applied for relief.  Consequently, petitioner's election was timely, and he has satisfied those two pertinent conditions.

VI.  Applicable Law

Section 6015(c) permits an individual to elect to limit the liability arising from a joint Federal income tax deficiency to the portion of the deficiency that is properly allocable to the electing individual under section 6015(d).  Estate of Capehart v. Commissioner, 125 T.C. 211, 214 (2005); Barnes v. Commissioner, T.C. Memo. 2004-266; sec. 1.6015-3(a), Income Tax Regs.  However, the relief is not available to the extent "the Secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof)".  Sec. 6015(c)(3)(C).

We interpret the actual knowledge requirement of section 6015(c) at issue here more narrowly than the "reason to know" standard of section 6015(b) or (f).  See Porter v. Commissioner, supra at __ (slip op. at 14-15) (discussing the reason to know standard).  A Senate committee report accompanying the 1998 enactment of section 6015 highlights the distinction, stating that "actual knowledge must be established by the evidence and shall not be inferred based on indications that the electing spouse had a reason to know."  See S. Rept. 105-174, at 59 (1998) 1998-3 C.B. 537, 595.

Our jurisprudence holds that the requesting spouse must have more than mere "knowledge that the [improper] deduction appears on the return".  King v. Commissioner, 116 T.C. at 205.  Instead the requesting spouse must have "actual knowledge of the factual circumstances which made the item unallowable as a deduction." Id. at 204; sec. 1.6015-3(c)(2)(i)(B)(1), Income Tax Regs. ("In the case of an erroneous deduction or credit, knowledge of the item means knowledge of the facts that made the item not allowable as a deduction or credit.").

VII.  Application of the Law to the Facts

Petitioner contends he is entitled to full relief from the income tax deficiencies for 2002 and 2003 because all of the disallowed deductions are allocable to intervenor.  We agree.

Intervenor had a college education with dual majors, and she has a successful career in business. She received a portion of her earnings as wages and the remainder as payments to her as an independent contractor. This arrangement allowed her to claim a portion of her business expenses on Schedule C rather than Schedule A. Intervenor found the tax preparer. She spent a significantly greater amount of time with the preparer. Importantly, the refunds for 2002 and 2003 were deposited directly into intervenor's separate bank account.

Intervenor's business expenses were overstated. When asked at trial about the disallowances, intervenor acknowledged that the tax preparer had provided misleading advice. Intervenor also acknowledged that she had been waiting for the "shoe to fall" because she had heard that other clients of Doris Tax Service had also received letters from the IRS. Further, when the revenue agent proposed the adjustments, intervenor quickly acquiesced.

Intervenor's arguments miss the main point. Under section 6015(c) the question is whether petitioner had actual knowledge of the facts underlying the disallowed deductions. Instead intervenor contends that petitioner must have known from loan applications, from the annual sessions with the tax preparer, and from reviewing the returns before signing them how much income intervenor earned. The deficiencies did not result from omitted income but from disallowed deductions.

Intervenor's other arguments are similarly misplaced. She contends that petitioner's lifestyle benefited from her higher earnings. She emphasizes that petitioner is also smart, and she contends that by signing the joint returns petitioner knowingly and freely accepted joint and several liability and accordingly, in the interests of justice and fairness, should live up to his responsibilities. These contentions are not probative of actual knowledge for purposes of section 6015(c)(3)(C).

At trial petitioner's testimony was credible, straightforward, and without guile. Petitioner did not have a level of financial acumen comparable to intervenor's. He worked in blue collar jobs, and his formal education ended after high school.

Petitioner from the outset vehemently denied that at the time of signing the returns he had knowledge of the facts that resulted in respondent's disallowance of deductions that intervenor had claimed. He incurred the expense of hiring an attorney to contest the disallowance whereas intervenor did not hire a lawyer. Moreover, the revenue agent did not adjust petitioner's work expenses and did not attribute any of the disallowance of expenses to petitioner. Likewise, respondent in preparation of this case for trial reviewed the evidence and stipulated that petitioner was entitled to full relief.

We now address in turn the three specific sets of disallowed deductions.

### A. Disallowed Schedule C Business Expenses

We find credible petitioner's characterization of his and intervenor's financial arrangements.  Petitioner was busy at his job as an ironworker while also building the house.  He did not participate in intervenor's business, did not see her bank account statements, did not sign her checks, and did not review her records.  Petitioner and intervenor primarily financed, made the monthly payments on, and insured their own vehicles separately.  Their marriage was rocky and short lived.  We believe intervenor was not likely to have divulged the details of her business, nor is it probable that petitioner would have had much interest in the specifics.

As stated in King v. Commissioner, 116 T.C. at 204, the inquiry under section 6015(c) is whether petitioner "had actual knowledge of the factual circumstances which made the item unallowable as a deduction."  No evidence establishes that petitioner had actual knowledge of the facts causing respondent to disallow intervenor's business expense deductions.  As a result petitioner is entitled to relief from joint and several liability with respect to intervenor's disallowed business expense deductions.

B. Disallowed Deductions for Contributions

1. Noncash Contributions

A similar result applies with respect to the noncash charitable contributions. Respondent disallowed $603 and $777 of the $4,537 and $3,267 total deductions that intervenor claimed for noncash charitable contributions in 2002 and 2003, respectively.

Other than his general awareness that intervenor donated items to Goodwill, we believe petitioner did not have precise information regarding the circumstances of intervenor's deductions or the specifics of her valuations or the adequacy of her substantiation. We find that petitioner lacked actual knowledge respecting the disallowed noncash charitable contribution deductions and is entitled to section 6015(c) relief with regard to the portion of the deficiencies attributed to him.

2. Cash Contributions

Respondent allowed only $10 and $50 of the $6,585 and $7,585 itemized deductions for cash charitable contributions for 2002 and 2003, respectively. The revenue agent's adjustment report stated that the contributions "claimed on the return were overstated and have been allowed as adequately verified." No evidence establishes petitioner's actual knowledge with respect to these items. We believe petitioner's statement that charitable contributions were intervenor's responsibility. He is

entitled to innocent spouse relief with respect to the disallowed cash charitable contribution deductions.

C. <u>Disallowance of Additional Miscellaneous Itemized Deductions</u>

The revenue agent disallowed $4,350 and $8,068 for 2002 and 2003, respectively, of the miscellaneous itemized deductions. The revenue agent did not adjust petitioner's separate miscellaneous itemized deductions of $1,104 and $1,144 for 2002 and 2003, respectively, pertaining to union dues and specialized work clothing. Although intervenor asserted in passing that at least some of the disallowed deductions were for petitioner's schooling, she did not corroborate her statement; and petitioner credibly denied it. Moreover, the revenue agent's examination report did not mention schooling or indicate that any of the disallowed miscellaneous expenses were attributable to petitioner. Similarly, respondent stipulated that petitioner was not responsible for any portion of the unpaid liability.

In the end the lack of any evidence establishing petitioner's actual knowledge of the facts which made the miscellaneous itemized deductions unallowable is decisive. Consequently, petitioner is entitled to innocent spouse relief with respect to them.

VIII.  <u>Respondent's Motion To Dismiss Petitioner's Interest Abatement Request</u>

This Court has jurisdiction to review a section 6404(e) interest abatement request only when the Commissioner has mailed a final determination not to abate interest.  <u>Bourekis v. Commissioner</u>, 110 T.C. 20, 26 (1998); see also Rule 280(b). Because petitioner did not request an abatement of interest from respondent and respondent did not issue a determination denying an abatement request, we lack jurisdiction to review the matter. We note that petitioner's request for abatement is moot because of our grant of section 6015(c) relief.  Accordingly, we will grant respondent's motion to dismiss petitioner's section 6404(e) interest abatement request for lack of jurisdiction.

To reflect our disposition of the issues,

<u>An appropriate order will be issued granting respondent's motion, and decision will be entered for petitioner</u>.