T.C. Summary Opinion 2016-79

UNITED STATES TAX COURT

DWIGHT MCDONALD AND DONNA MCDONALD, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3266-15S.                    Filed December 1, 2016.

Dwight McDonald and Donna McDonald, pro sese.

<u>Erika B. Cormier</u> and <u>R. Jeffrey Knight</u>, for respondent.

SUMMARY OPINION

LAUBER, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursu-

_____

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

ant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

With respect to petitioners' Federal income tax for 2009-2011, the Internal Revenue Service (IRS or respondent) determined deficiencies and an accuracy-related penalty as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2009 | $3,407 | -0- |
| 2010 | 4,971 | -0- |
| 2011 | 10,258 | 2,052 |

Petitioners have conceded the deficiencies and penalty in full. The sole issue remaining for decision is whether petitioner Donna McDonald is entitled under section 6015(c) to relief from joint and several liability as to portions of the liabilities shown above. Petitioner Dwight McDonald opposes her request for relief, but we agree with respondent that she is entitled to it.

## Background

The parties filed a stipulation of facts with accompanying exhibits that is incorporated by this reference. At the time their petition was filed, petitioners were divorced and resided in separate locations in Rhode Island.

During 2009-2011 petitioner Dwight McDonald worked full time as a senior IT specialist at IBM Corp. He also engaged in a rental real estate activity

through Gulf Coast South Holdings, LLC (Gulf Coast). Through Gulf Coast he held for rental 10 residential real estate properties in Florida and Alabama (one property was sold in 2010). Mr. McDonald actively participated in this rental real estate activity, but he relied for day-to-day management on property management companies in Florida and Alabama, respectively.

During 2009-2011 petitioner Donna McDonald owned and operated a travel agency business, Travel Plus, LLC. In 2009 she attended nursing school part time. She graduated in 2010 and worked as a part-time nurse in 2010 and 2011. She had no knowledge of Federal tax law and relied entirely on Mr. McDonald and their certified public accountant (C.P.A.) to prepare their returns.

Petitioners jointly owned some of the rental real estate properties, and Mrs. McDonald's name appeared on the mortgages for those properties. However, she did not directly participate in Mr. McDonald's real estate business. She knew that Mr. McDonald devoted substantial time to the recordkeeping and financial aspects of this business, and she occasionally answered the telephone when the management companies called seeking his guidance on various points.

Throughout their marriage Mr. McDonald was primarily responsible for the couple's finances. Mrs. McDonald testified that Mr. McDonald maintained a locked room in their house where he stored IBM-related documents and financial

records relating to his real estate business. Mrs. McDonald credibly testified that she did not have access to this storage room or to the financial records stored in it.

Petitioners separated in 2011 and finalized their divorce in May 2012. In the marital settlement agreement the parties acknowledged that Mr. McDonald "owns a business known as Gulf Coast," and he was awarded sole ownership of the Florida and Alabama rental properties. Mrs. McDonald explicitly waived any interest she might be thought to have in Gulf Coast.

Petitioners filed delinquent joint income tax returns for 2009-2011, which were prepared by Otrando, Porcaro & Associates, a Rhode Island accounting firm. The first of these returns was filed on June 13, 2011. Mrs. McDonald went to the firm's office to sign the completed returns. She credibly testified that their C.P.A. did not review the returns with her or provide a detailed explanation of the various line entries appearing on the returns. However, the C.P.A. had advised petitioners some years earlier (apparently in 2009) that one or both of them qualified as real estate professionals by virtue of the substantial time and effort devoted to the rental real estate activity.

Included in petitioners' return for each year was a Schedule E, Supplemental Income and Loss, reporting income and expenses of Mr. McDonald's real estate business. On these Schedules E petitioners reported, from the Florida and

Alabama properties, rental real estate losses of $119,246, $78,002, and $58,550 for 2009, 2010, and 2011, respectively.

The IRS selected petitioners' 2009-2011 returns for examination and made the following adjustments.

• The IRS allowed petitioners to deduct $25,000 of Schedule E losses for each year on the ground that Mr. McDonald "actively participated" in the rental real estate business. See sec. 469(i). The IRS disallowed all loss deductions in excess of $25,000 as nondeductible passive losses, determining that Mr. McDonald was not a real estate professional, i.e., that he did not "materially participate" in a "real property trade or business." See sec. 469(c)(7).

• The IRS determined that petitioners had received taxable refunds of State income tax of $3,309, $3,364, and $3,337 for 2009, 2010, and 2011, respectively.

• The IRS determined that for 2010 Mrs. McDonald had unreported wage income of $9,599, as reported to the IRS on two Forms W-2, Wage and Tax Statement.

• As a corollary of disallowing the Schedule E loss deductions for 2009, the IRS determined that petitioners were not entitled to deductions for net operating loss (NOL) carryforwards attributable to the Schedule E business of $5,146 and $13,086 for 2010 and 2011, respectively.

On November 4, 2014, the IRS sent petitioners a timely notice of deficiency determining deficiencies in tax and an accuracy-related penalty in the amounts shown above. See supra p. 2. Petitioners timely petitioned this Court for redetermination, assigning error principally to the IRS' determination that they did not qualify as real estate professionals under section 469(c)(7)(B). After the petition was filed, Mrs. McDonald submitted Form 8857, Request for Innocent Spouse Relief, requesting relief from joint and several liability, which Mr. McDonald has opposed.

## Discussion

A.     Relief From Joint and Several Liability

Married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making this election, each spouse is jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). In certain circumstances, a spouse who has filed a joint return may seek relief from joint and several liability under procedures set forth in section 6015. Unless otherwise provided in section 6015, the taxpayer bears the burden of proving his or her entitlement to such relief. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004).

The scope and standard of review that we apply in such cases are de novo. Porter v. Commissioner, 132 T.C. 203, 210 (2009).

Section 6015 affords relief from joint and several liability on three possible grounds. See sec. 6015(b), (c), (f). Mrs. McDonald seeks relief only under section 6015(c). It provides for allocation of the tax liability between the spouses as if they had filed separate returns reporting their respective items of income and deduction. "For purposes of section 6015(c), unlike for purposes of section 6015(b) and (f), equitable considerations * * * are of no import." Cheshire v. Commissioner, 115 T.C. 183, 194 (2000), aff'd, 282 F.3d 326 (5th Cir. 2002). If relief is available under section 6015(c), subsection (d) specifies the method for allocating the tax liability.

A requesting spouse may elect to have section 6015(c) apply if three conditions are met. The requesting spouse must: (1) have joined in the filing of a joint return for the year at issue; (2) be divorced or legally separated from the nonrequesting spouse at the time relief is sought; and (3) seek relief no later than two years after the date on which the IRS first commences collection activity for the year at issue. See sec. 6015(c)(1), (3). The parties agree that Mrs. McDonald meets these three threshold requirements.

Notwithstanding satisfaction of these threshold tests, an election to have section 6015(c) apply is invalid "[i]f the Secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or a portion thereof) which is not allocable to such individual under subsection (d)." Sec. 6015(c)(3)(C); see Charlton v. Commissioner, 114 T.C. 333, 341 (2000); Martin v. Commissioner, T.C. Memo. 2000-346. The regulations explain this rule as follows:

> If * * * the Secretary demonstrates that * * * the requesting spouse had actual knowledge of an erroneous item that is allocable to the nonrequesting spouse, the election to allocate the deficiency attributable to that item is invalid, and the requesting spouse remains liable for the portion of the deficiency attributable to that item. * * *

Sec. 1.6015-3(c)(2)(i), Income Tax Regs. This "actual knowledge" exception does not apply if the requesting spouse "establishes that * * * [she] signed the return under duress." Sec. 6015(c)(3)(C) (last sentence). Mrs. McDonald does not contend that she signed the 2009-2011 joint returns under duress.

In deciding whether Mrs. McDonald made a valid election to have section 6015(c) apply, we are thus required to determine whether, at the time she signed the returns, she had "actual knowledge * * * of any item giving rise to a deficiency" that was allocable to Mr. McDonald. Sec. 6015(c)(3)(C). By requiring that

the Secretary demonstrate actual knowledge of an erroneous item, the statute puts the burden of proof on respondent, and the regulations confirm this. See sec. 1.6015-3(c)(2)(i), Income Tax Regs. ("The Service, having both the burden of production and the burden of persuasion, must establish, by a preponderance of the evidence, that the requesting spouse had actual knowledge of the erroneous item in order to invalidate the election.").

The statute does not address burden of proof in the situation we face here, where the IRS supports relief from joint and several liability and the nonrequesting spouse opposes it. In such cases we "inquire whether actual knowledge has been established by a preponderance of the evidence" presented by all three parties. McDaniel v. Commissioner, T.C. Memo. 2009-137, 97 T.C.M. (CCH) 1786, 1789; see Pounds v. Commissioner, T.C. Memo. 2011-202, 102 T.C.M. (CCH) 184, 187.

"Actual knowledge" means "an actual and clear awareness (as opposed to reason to know)" about the item giving rise to the deficiency. Cheshire, 115 T.C. at 195. A taxpayer lacks actual knowledge if she "is unaware of the circumstances that give rise to error on the tax return." King v. Commissioner, 116 T.C. 198, 204 (2001) (quoting Bokum v. Commissioner, 94 T.C. 126, 145-146 (1990), aff'd, 992 F.2d 1132 (11th Cir. 1993)). In the context of a disallowed deduction, the

relevant question is whether the requesting spouse "had actual knowledge of the factual circumstances which made the item unallowable as a deduction." Id.; Young v. Commissioner, T.C. Memo. 2012-255, at *12; sec. 1.6015-3(c)(2)(i)(B), Income Tax Regs.

The parties' dispute focuses on the disallowed Schedule E loss deductions, which the parties agree are erroneous items allocable he to Mr. McDonald. Mrs. McDonald is entitled to relief with respect to these items unless she "had actual knowledge of the factual circumstances which made the * * * [Schedule E losses] unallowable as a deduction." See King, 116 T.C. at 204. During the examination the IRS agreed that petitioners were entitled to deduct $25,000 of such losses annually because Mr. McDonald "actively participated" in the real estate business. See sec. 469(i). The factual circumstance which made the balance of those losses unallowable as a deduction was that Mr. McDonald was not a real estate prof-essional, i.e., that he did not "materially participate" in a "real property trade or business." See sec. 469(c)(7).

We accordingly must decide whether Mrs. McDonald had "actual know-ledge" that Mr. McDonald did not qualify as a real estate professional under the governing statutory standards. A taxpayer qualifies as a real estate professional only if: (1) more than half of the personal services he performs in trades or

businesses during the taxable year are performed in real property businesses in which he materially participates and (2) he performs more than 750 hours of services during the taxable year in real property businesses in which he materially participates. Sec. 469(c)(7)(B).

On the basis of the preponderance of the evidence, we find that Mrs. McDonald lacked "an actual and clear awareness," Cheshire, 115 T.C. at 195, that her former spouse failed to qualify as a real estate professional. She had no knowledge of Federal tax law and was advised by their C.P.A. in 2009 that she or Mr. McDonald (or both of them) did qualify as a real estate professional. She had no reason to question the C.P.A.'s advice: Although she did not know the exact scope of Mr. McDonald's rental real estate activity, she was aware that his participation in the activity was significant. She knew that he devoted substantial time to the recordkeeping and financial aspects of the real estate business; that he kept volumes of financial records in a locked room to which she had no access; and that the management companies routinely called him when decisions about the rental properties needed to be made. Under these circumstances, we find that Mrs. McDonald lacked "actual knowledge of the factual circumstances which made the * * *[Schedule E losses] unallowable as a deduction." King, 116 T.C. at 204; cf. Phemeister v. Commissioner, T.C. Memo. 2009-201 (finding that requesting

spouse had "actual knowledge" where she ran the day-to-day operations and was aware of defective recordkeeping and other facts leading to the conclusion that the activity was not engaged in for profit).[2]

B.     Section 6015(d) Allocation

Once it has been determined that the requesting spouse is entitled to relief under section 6015(c), subsection (d) specifies the appropriate allocation of the deficiency. It provides that erroneous items "shall be allocated to each spouse as though each had filed a separate return for the taxable year." Estate of Capehart v. Commissioner, 125 T.C. 211, 215 (2005). The requesting spouse is then liable "only for his/her proportionate share of the deficiency." Ibid.

The regulations provide guidance as to the allocation of specific items. "Erroneous items of income are allocated to the spouse who was the source of the income." Sec. 1.6015-3(d)(2)(iii), Income Tax Regs. "In the absence of clear and

---

[2]Mr. McDonald contends that Mrs. McDonald had actual knowledge of his real estate business because she coowned some of the rental properties, answered calls from the management companies, and was advised by their C.P.A. that one or both of them qualified as a real estate professional. We agree that Mrs. McDonald had actual knowledge that Mr. McDonald was engaged in a real estate business. The relevant question, however, is whether she had actual knowledge that her ex-husband, while materially participating in a real estate business, did not participate sufficiently to qualify as a real estate professional under the governing statutory standards. As explained in the text, the preponderance of the evidence convinces us that she did not have such knowledge.

convincing evidence supporting a different allocation," an erroneous income item relating to jointly owned assets "is generally allocated 50% to each spouse." Ibid. "Erroneous deductions related to a business or investment are allocated to the spouse who owned the business or investment." Id. subdiv. (iv). Accuracy-related penalties "are allocated to the spouse whose item generated the penalty." Id. subpara. (4)(iv)(B).

Under these standards, we conclude that the deficiencies and penalty for 2009-2011 should be allocated as follows.

• Mrs. McDonald failed to report wage income of $9,599 for 2010. Because she was the source of that income, the portion of the deficiency attributable to this item is allocable to her. See id. para. (d)(2)(iii).

• Petitioners failed to report State income tax refunds of $3,309, $3,364, and $3,337 for 2009, 2010, and 2011, respectively. "In the absence of clear and convincing evidence supporting a different allocation," the portions of the deficiencies attributable to these items will be allocated 50% to each spouse. See ibid.

• Mr. McDonald owned and operated, through Gulf Coast, the real estate business that generated the erroneous Schedule E loss deductions. The portions of the deficiencies attributable to these items will thus be allocated 100% to him. See id. subdiv. (iv). Because the NOL deductions claimed for 2010 and 2011 arose

from the Schedule E losses, the portions of the deficiencies attributable to the NOL deductions will likewise be allocated 100% to him.

    • The accuracy-related penalty of $2,052 for 2011 will be allocated to Mrs. McDonald to the extent the deficiency is attributable to her 50% share of the unreported State income tax refund.  The balance of the accuracy-related penalty will be allocated to Mr. McDonald.  See id. subdiv. (iv)(B).

    To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.