T.C. Memo. 2019-136

UNITED STATES TAX COURT

HABIBE KRUJA, Petitioner, AND ERMIR KRUJA, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23859-17.                    Filed October 15, 2019.

Habibe Kruja, pro se.

Ermir Kruja, pro se.

<u>Derek S. Pratt</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, <u>Judge</u>:  The sole issue before the Court is whether Ms. Kruja is

entitled to innocent spouse relief under section 6015.[1]  The Commissioner initially

---

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[*2]** denied Ms. Kruja's request for relief relating to deficiencies from 2010 and 2011 taxable years but now concedes that she is entitled to relief. However, Mr. Kruja opposes relief. Ms. Kruja is entitled to relief under section 6015(c) for deficiencies and accuracy-related penalties allocable to Mr. Kruja.

FINDINGS OF FACT

Ms. Habibe Kruja was married to Mr. Ermir Kruja in 2010 and 2011, the years at issue. Ms. Kruja holds a master's in business administration degree, and in 2010 and 2011 she worked as a finance manager at Cushman & Wakefield. In 2010 and 2011 Mr. Kruja owned and operated his business, Bobbie's Cafe. The Krujas maintained a joint bank account during the years at issue. Ms. Kruja also maintained her own personal bank account, and Mr. Kruja maintained several business and personal accounts.

The Krujas filed joint Forms 1040, U.S. Individual Income Tax Return, for 2010 and 2011. They received State refunds but did not report these refunds as income on their Federal income tax returns. In addition they reported unreimbursed employee business expenses on their Schedules A, Itemized

---

[1](...continued)
Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] Deductions. As required on the Schedules A, they attached Forms 2106, Employee Business Expenses, for Mr. Kruja's business and Forms 2106-EZ, Unreimbursed Employee Business Expenses, for Ms. Kruja to the returns. For 2011 they filed an amended return and attached Schedule C, Profit or Loss From Business, reporting gross receipts and deducting expenses related to Bobbie's Cafe.

Ms. Kruja filed for divorce in June 2013.

On March 7, 2014, the Commissioner issued the Krujas a notice of deficiency for their tax years 2010 and 2011. The Commissioner (1) determined additional income from Bobbie's Cafe, (2) disallowed or adjusted various Schedule C deductions attributable to Bobbie's Cafe, (3) determined income from State tax refunds, and (4) disallowed all Schedule A unreimbursed employee business expense deductions. Because the Krujas benefit more from the standard deduction than the adjusted itemized deductions, the Commissioner allowed the standard deduction in lieu of itemized deductions. The Commissioner also determined accuracy-related penalties under section 6662(a).

To determine the unreported income from Bobbie's Cafe on their returns, the Commissioner used the bank deposits analysis method. The Krujas' joint bank

**[*4]** account and Mr. Kruja's various bank accounts showed deposits for State tax refunds as well as income from Bobbie's Cafe that had not been reported.

The Krujas petitioned the Tax Court to redetermine the deficiency in docket No. 13368-14, and the case settled without a trial. As a result of this initial proceeding the parties agreed on deficiencies for 2010 and 2011 of $37,380 and $146,957, respectively, and penalties under section 6662(a) of $3,738 and $14,696, respectively. Counsel purporting to represent the Krujas in the deficiency proceeding signed the decision on behalf of both Mr. and Ms. Kruja.

In May 2014 Ms. Kruja filed Form 8857, Request for Innocent Spouse Relief, for 2010, 2011, and 2012. On this request Ms. Kruja claimed the deficiencies were "due to the errors/ommissions [sic] from her ex-husband", she "had no involvement with her ex-husband's business" or "with the record keeping of her ex-husband's business", and she did not benefit "in any way from the income that had not been claimed on the 2010, 2011 or 2012 tax returns." She further stated on the Form 8857:

> Habibe prepared and filed the 2010 tax return with her husband. Habibe had not been involved in any way with her husband's 2010 business return.
>
> Habibe prepare[d] and filed jointly the 2011 tax return with her husband. Habibe received information from her husband's accountant, who had prepared the information for the schedule C.

**[\*5]** In an explanation of household finances on Form 8857, Ms. Kruja asserted:

> Habibe and her husband had a joint account, however Habibe did not deposit money into the joint account or take disbursements from the joint account. Habibe had her own account and it was her belief that the joint account had no activity since her husband also kept his own account(s).

The Krujas' divorce became final on April 16, 2015. On May 20, 2015, the Commissioner granted Ms. Kruja innocent spouse relief for 2012 under section 6015(b).

On July 15, 2015, the Commissioner received a second Form 8857 from Ms. Kruja concerning 2010 and 2011. On her request, Ms. Kruja asserted the following claims:

> The tax liability that resulted from the audit of 2010 and 2011 occurred due to errors/ommisions [sic] from my ex-husband. I had no involvement with his business, which is the cause of the additional tax obligation. I did not have involvement in the record keeping of the business either. I did not benefit in anyway [sic] from the income from 2010 and 2011. I had the courage to open a separate bank account but he was very angry with that decision and he would not give me any of his income and made me pay all of the bills and childcare expense from my account.
>
> In addition to all this, somehow Ermir managed to manipulate the system to ensure that I was not involved in the audit process. I had transferred my power of attorney to Allan Iadema in March, 2014 yet his attorney JG tax Group still represented me in court without my knowledge. I only learned this from countless hours of telephone calls to various departments in the IRS. He would not share any

**[\*6]** information with me even after asking for status updates. Neither would his attorney, even though they represented me in court.

On August 12, 2015, the IRS received a Form 12508, Questionnaire for Non-Requesting Spouse, from Mr. Kruja explaining why he did not believe Ms. Kruja should be granted innocent spouse relief. On the questionnaire Mr. Kruja claimed that Ms. Kruja prepared their tax returns, worked as a cashier, filed bills and invoices, and organized paperwork on behalf of his business, Bobbie's Cafe.

The Commissioner considered Ms. Kruja's appeal and issued a letter on August 24, 2017, denying Ms. Kruja innocent spouse relief for 2010 and 2011 under section 6015(b), (c), and (f). In the letter the Commissioner determined that the Tax Court had already "issued a final decision" and that Ms. Kruja "meaningfully participated in that proceeding."

While residing in Arizona, Ms. Kruja filed a timely petition based on the determination.[2] She claimed the following:

> I did not participate in the court proceeding as I was not made aware
> of it whatsoever. The full burden is on me when most of the tax debt
> is related to the business that was fully owned by Ermir Kruja--my ex
> spouse. I had zero interest, was not a shareholder or a partner.

---

[2]We acknowledge that Arizona is a community property State, but that fact does not change our analysis. See sec. 6015(a) (flush language).

**[\*7]** Mr. Kruja intervened[3] to contend that Ms. Kruja was not entitled to relief because she did their taxes, knew about all of the bank accounts and their income and expenses, and had received a large settlement from the business proceeds in the divorce.

Since the filing of that petition, the Commissioner has changed some of his positions. He now contends that Ms. Kruja is not precluded from raising a claim for innocent spouse relief for 2010 and 2011. The Commissioner claims that the adjustments attributable to Bobbie's Cafe should be allocated to Mr. Kruja. The Commissioner also claims that unreported State tax refunds and disallowed unreimbursed employee business expenses attributable to Ms. Kruja's job should be allocated to her.

---

[3]If a spouse petitions the Court for section 6015 relief, the nonrequesting spouse has a right to intervene in the case under section 6015(e)(4) and Rule 325. By doing so, the intervenor becomes a party. Sec. 6015(e)(4).

**[\*8]** This case was tried in January 2019.[4] Both Mr. and Ms. Kruja testified, and they disagreed as to the extent of her involvement with Bobbie's Cafe and her method for preparing their joint returns. This disagreement was also evident from their statements in the administrative record.

## OPINION

Married taxpayers may generally elect to file a joint Federal income tax return.[5] If they do so, each spouse is jointly and severally liable for the entire tax

---

[4]We held trial in this case before the enactment of section 6015(e)(7), which provides:

> (7) Standard and scope of review.--Any review of a determination made under this section shall be reviewed de novo by the Tax Court and shall be based upon--
> > (A) the administrative record established at the time of the determination, and
> > (B) any additional newly discovered or previously unavailable evidence.

This provision is effective for "petitions or requests filed or pending on or after the date of the enactment of this Act." Taxpayer First Act, Pub. L. No. 116-25, sec. 1203(b), 133 Stat. at 988 (2019). Because the trial evidence was merely cumulative of what was already included in the administrative record, section 6015(e)(7) does not affect the outcome of this case. As a result, we have not addressed the effect of section 6015(e)(7).

[5]Sec. 6013(a).

[*9] liability for that year.[6] In certain circumstances, a spouse who previously filed a joint return may seek relief from joint and several liability under procedures set forth in section 6015.[7]

Section 6015(a) allows a spouse to seek relief from joint and several liability under subsection (b) and, if eligible, to elect to allocate the liability according to provisions set forth in subsection (c). If a taxpayer does not qualify for relief under either subsection (b) or (c), the taxpayer may be eligible for equitable relief under subsection (f). The Secretary has discretion to grant equitable relief to a spouse who filed a joint return with an unpaid tax liability or a deficiency.[8] Except as otherwise provided in section 6015, the taxpayer bears the burden of proving that he or she is entitled to section 6015 relief.[9]

In the determination, the Commissioner asserted that the Tax Court had already issued a final decision in a deficiency proceeding in which Ms. Kruja could have raised innocent spouse relief and that she had meaningfully participated in that proceeding. However, the Commissioner now agrees with Ms.

---

[6]Sec. 6013(d)(3).

[7]Sec. 6015(a).

[8]Sec. 6015(f).

[9]Rule 142(a).

**[\*10]** Kruja that she is not precluded from raising a claim for relief and that the doctrine of res judicata does not apply here. Res judicata generally prevents parties from relitigating the same cause of action and "applies to a claim if it was, or could have been, litigated as part of the cause of action in a prior case."[10] Under section 6015(g)(2), "to escape the effect of res judicata from prior litigation, the requesting spouse must show (1) that his innocent spouse claim 'was not an issue' in the prior proceeding <u>and</u> (2) that he did not 'participate[] meaningfully' in the prior proceeding."[11] The Commissioner bears the burden of proving that res judicata precluded Ms. Kruja's section 6015(c) claim.[12] Because Ms. Kruja did not meaningfully participate in the case in docket No. 13368-14, she is not precluded from raising her claim.

Ms. Kruja elected relief under section 6015(c) twice--once before the Krujas' divorce was finalized and once after. Under section 6015(c), a divorced or separated spouse may elect to limit liability for a deficiency on a joint return. The election may be filed at any time after the deficiency is asserted but not later than

---

[10]<u>Morse v. Commissioner</u>, T.C. Memo. 2003-332, 86 T.C.M. (CCH) 673, 676-677 (2003), <u>aff'd</u>, 419 F.3d 829 (8th Cir. 2005).

[11]<u>Koprowski v. Commissioner</u>, 138 T.C. 54, 65 (2012).

[12]<u>See</u> Rules 39, 142(a); <u>Calcutt v. Commissioner</u>, 91 T.C. 14, 20-21 (1988).

[*11] two years after the Secretary begins collection activities.[13] Here, no collection activities have commenced, so the two-year period has not started to run.

To be eligible for relief under section 6015(c) the electing individual must: (1) no longer be married to or be legally separated from, the individual with whom the joint return was filed or (2) not have been a member of the same household with the individual with whom the joint return was filed during the 12-month period before the election was filed.[14] The regulations permit a second election when a change in the taxpayer's marital status opens the door to relief for which the taxpayer was previously ineligible.[15] Ms. Kruja did not qualify for relief under section 6015(c) at the time of her first request because she was still married and had been physically separated for less than 12 months at the time of election. Ms. Kruja's second claim for innocent spouse relief satisfied the timing requirements for purposes of her eligibility for relief under section 6015(c) because she was divorced when she made the second election.

---

[13]Sec. 6015(c)(3)(B).

[14]Sec. 6015(c)(3)(A)(i).

[15]Sec. 1.6015-1(h)(5), Income Tax Regs.

[*12] Section 6015(c) limits the requesting spouse's liability for a deficiency to the portion of the deficiency properly allocable to that spouse under subsection (d). In general, any item giving rise to a deficiency on a joint return is allocated to the individuals filing the return in the same manner as it would have been if the individuals had filed separate returns.[16] Under section 6015(c)(2), the electing spouse generally has the burden of proving how much of any deficiency is allocable to him or her.

However, section 6015(d) provides an exception that allows an item that would ordinarily be allocable to one individual under the general rule to be allocable to the other individual filing the joint return to the extent that the other individual received a tax benefit from the item.[17] Ms. Kruja claims that she did not receive any tax benefits from the unreported income, and neither Mr. Kruja nor the Commissioner disputes this claim.

As for allocation of erroneous items between the former spouses, section 1.6015-3(d)(2)(iii), Income Tax Regs., provides that "[e]rroneous items of income are allocated to the spouse who was the source of the income", and section 1.6015-3(d)(2)(iv), Income Tax Regs., provides that "[e]rroneous deductions related to a

---

[16]Sec. 6015(d)(3)(A).

[17]Sec. 6015(d)(3)(B).

[*13] business or investment are allocated to the spouse who owned the business or investment." It is undisputed that Bobbie's Cafe was Mr. Kruja's business. As a result all adjustments attributable to Bobbie's Cafe are allocable to Mr. Kruja. This includes all adjustments to Schedule C items, the unreported income from Bobbie's Cafe, and Mr. Kruja's portion of the disallowed employee business expense deductions. Likewise, disallowed unreimbursed employee business expense deductions attributable to Mr. and Ms. Kruja are separately allocable to each of them.

If the Commissioner shows that when signing the return the electing spouse had actual knowledge of any item giving rise to a deficiency (or portion thereof) which is not allocable to the electing spouse, the election usually does not apply to that deficiency (or portion).[18] The Commissioner must demonstrate actual knowledge by a preponderance of the evidence.[19] The actual knowledge standard is narrower than the "reason to know" standard applied under section 6015(b) and (f).[20] Proving actual knowledge requires the Commissioner to show that the

---

[18]Sec. 6015(c)(3)(C).

[19]Culver v. Commissioner, 116 T.C. 189, 196 (2001).

[20]McDaniel v. Commissioner, T.C. Memo. 2009-137, 97 T.C.M. (CCH) 1786, 1789 (2009).

[*14] individual making the election had "actual knowledge of the factual circumstances which made the item unallowable as a deduction."[21] Proving actual knowledge of the tax laws or the legal consequences is not required.[22]

Our Court has not answered and we leave open the question of whether the burden of proof shifts to the intervenor when the Commissioner concedes that a taxpayer is entitled to relief and an intervenor opposes relief.[23] Because we would decide this case the same way regardless of which party bears the burden, we do not need to decide who bears the burden.

The Commissioner agrees with Ms. Kruja that she did not have actual knowledge of the items giving rise to the deficiencies attributable to Mr. Kruja's business when she signed the returns. Mr. Kruja disagrees. Nevertheless, the evidence in the administrative record does not establish that Ms. Kruja had actual knowledge of the items attributable to Bobbie's Cafe giving rise to the deficiencies.

We do not agree with the Commissioner that the full portions of the deficiencies attributable to the State tax refunds are allocable to Ms. Kruja. In the

---

[21]King v. Commissioner, 116 T.C. 198, 204 (2001).

[22]King v. Commissioner, 116 T.C. at 204.

[23]See Hollimon v. Commissioner, T.C. Memo. 2015-157, at *7.

[*15] absence of clear and convincing evidence supporting a different allocation, an erroneous item of income is generally allocated 50% to each spouse.[24] Mr. and Ms. Kruja owned the State tax refunds jointly and there is no evidence in the administrative record, or adduced at trial, to support an allocation other than 50% to each spouse. Accordingly, the State tax refunds are properly allocated 50% each to Mr. and Ms. Kruja.

The Commissioner contends that Ms. Kruja had actual knowledge of the unreported State tax refunds. Although the Krujas' bank account statements indicate receipt of State tax refunds from Arizona, the record is insufficient to establish that Ms. Kruja had actual knowledge of the unreported State tax refunds.

Ms. Kruja generally requested relief under section 6015 but did not provide arguments regarding relief under section 6015(b) or equitable relief under section 6015(f). As a result, Ms. Kruja is not alternatively eligible for relief for the State tax refunds or the employee business expenses under subsections (b) and (f).

We must also address Mr. and Ms. Kruja's liabilities for accuracy-related penalties that have previously been established with respect to the 2010 and 2011 deficiencies. When a section 6662 accuracy-related penalty is included among the items to be allocated under section 6015(c), section 1.6015-3(d)(4)(iv)(B), Income

---

[24]Sec. 1.6015-3(d)(2)(iii), Income Tax Regs.

**[\*16]** Tax Regs., provides that the penalty is "allocated to the spouse whose item generated the penalty." Following that regulation, the penalties must be allocated to Mr. Kruja for all items except Ms. Kruja's half of the State tax refunds and her employee business expenses.

Conclusion

On the basis of the record before us, we hold that Ms. Kruja is entitled to relief under section 6015(c) for all items giving rise to the 2010 and 2011 deficiencies that are attributable to Mr. Kruja's business, the portions of the deficiencies attributable to Mr. Kruja's half of the State tax refunds, and the accompanying accuracy-related penalties.

To reflect the foregoing,

An appropriate decision will be entered under Rule 155.