114 T.C. No. 22


UNITED STATES TAX COURT


FREDIE LYNN CHARLTON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

SARAH K. HAWTHORNE, f.k.a. SARAH K. CHARLTON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 11412-98, 11861-98.     Filed May 16, 2000.


Ps were married in 1989, separated in 1995, and divorced in 1996.  In 1994, W operated Medi-Task, a physician's transcription business.  H was employed full time by a large corporation until September 1994.  In the fall of 1994, he moved to a lake and began to renovate some rental cabins.  Ps filed a joint tax return for 1994 in which they reported that they had self-employment tax liability for the transcription business and deducted rental cabin expenses.

R determined a deficiency based in part on adjustments to Ps' self-employment tax and denial of deductions relating to the cabins.  Ps filed petitions disputing R's determination.  Ps also alleged they each qualified for relief as an innocent spouse.

H contends that he qualifies for relief under sec. 6015(b) and (c), I.R.C.  W contended at trial that she

qualifies for relief under sec. 6015(b), (c), and (f), I.R.C., but now contends that she qualifies for relief only under sec. 6015(f), I.R.C.  R contends that the Tax Court lacks jurisdiction to decide W's claim under sec. 6015(f), I.R.C.

Held:  All transcription-related self-employment income is allocated to W under secs. 6017 and 1402(a)(5)(A), I.R.C.

Held, further, Ps' rental cabin expenses are not deductible because they are preoperational startup expenses.  See sec. 195, I.R.C.

Held, further, H does not qualify for relief under sec. 6015(b), I.R.C., but he qualifies for limitation of liability under sec. 6015(c), I.R.C., to the extent stated herein.

Held, further, We have jurisdiction to review whether relief is available under sec. 6015(f), I.R.C.

Fredie Lynn Charlton, pro se.

Sarah K. Hawthorne, pro se.

Deborah H. Delgado, Carl D. Inskeep, and Lewis J. Hubbard, for respondent.

COLVIN, Judge:  Respondent determined that, for 1994, petitioners were liable for a $15,192 deficiency in income tax and a $1,731 accuracy-related penalty under section 6662(a).

Following concessions,[1] the issues for decision are:

1.   Whether all of petitioners' self-employment income from

---

[1]  Respondent concedes that petitioners are not liable for the accuracy-related penalty under sec. 6662 for 1994.  Both petitioners and respondent agree that petitioners understated Medi-Task gross receipts for 1994 by $22,601 on their 1994 return.

Medi-Task is allocated to petitioner Sarah K. Hawthorne (Hawthorne) for purposes of computing self-employment tax for 1994. We hold that it is.

2. Whether petitioners may deduct expenses relating to their rental cabins in 1994. We hold that they may not.

3. Whether petitioner Fredie Lynn Charlton (Charlton) is entitled to relief from joint and several liability under section 6015(b) for the income tax deficiency arising from petitioners' 1994 joint return. We hold that he is not.

4. Whether petitioner Fredie Lynn Charlton qualifies for limitation of liability under section 6015(c) for the income tax deficiency arising from petitioners' 1994 joint return. We hold that he does to the extent described below.

5. Whether we have jurisdiction to review whether relief is available to petitioner Sarah K. Hawthorne under section 6015(f). We hold that we do. Thus, we will delay entry of decision to permit Hawthorne and respondent to report on the status of Hawthorne's application for relief under section 6015(f), and if relief is denied, to file a motion as part of this docketed case requesting our review of the Secretary's denial.

Section references are to the Internal Revenue Code in effect for 1994. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.   Petitioners

Petitioner Sarah K. Hawthorne (Hawthorne) lived in Burnet, Texas, when she filed her petition.  Petitioner Fredie Lynn Charlton (Charlton) lived in Buchanan Dam, Texas, when he filed his petition.  Petitioners lived in Texas, a community property State, at all times relevant to this case.

Hawthorne has a college degree in English.  She completed an accounting class and a marketing class but she did not do well in them.  Hawthorne did not take any income tax courses. Petitioners were married in 1989.  Before they were married, Charlton hired Hawthorne to be an office manager for a large manufacturing business.

Charlton was employed full time in Houston, Texas, until September 1994.  He moved his residence to Buchanan Dam, Texas, in the fall of 1994.

B.   Medi-Task

Medi-Task was a physician's transcription service. Hawthorne managed Medi-Task and performed most of its day-to-day operations.  Medi-Task had one employee in 1994.  Independent contractors did most of the transcribing for Medi-Task.  Charlton did not devote much time to Medi-Task because he was employed full time until September 1994.  He was not involved with Medi-

Task's hiring or marketing. He did not type any reports for Medi-Task, but he assisted when there were computer problems. Hawthorne kept Medi-Task's business records in petitioners' home in a file cabinet next to Charlton's records. She deposited Medi-Task's gross receipts in Charter Bank of Houston, and Lake Buchanan State Bank.

Charlton had access to Medi-Task's records while he prepared petitioners' 1994 return. Hawthorne prepared and gave Charlton lists that included all but $22,601 of Medi-Task's income and all but $2,050 of Medi-Task's expenses for 1994. She also gave him bank statements for Medi-Task, Forms 1099, Forms W-2, Wages and Tax Statement, and documents showing Medi-Task's expenses.

Charlton received unemployment compensation and VA disability payments in the last quarter of 1994. Medi-Task was Charlton's and Hawthorne's only other source of income during that 3-month period.

Petitioners signed a personal financial statement on April 15, 1995, which stated that Medi-Task was worth $110,000. Hawthorne sold Medi-Task in 1995 without Charlton's consent or participation and kept the proceeds.

C. Rental Cabins

Petitioners bought real property in the spring of 1993 at Charlton Pointe on Lake Buchanan in Llano County, Texas. There were some rental cabins on the property which were built in the

1950's and were rented until 1988 or 1989.

Petitioners began to rehabilitate the cabins in the fall of 1994.  Charlton spent time in 1994 working on the cabins and other aspects of the Charlton Pointe property.  Petitioners incurred expenses for travel to Charlton Pointe and expenses to rehabilitate the cabins.  However, petitioners rented no cabins at Charlton Pointe in 1994.  Charlton began renting the cabins in 1998.

D.  Petitioners' Income Tax Returns

Charlton used tax return preparation software to prepare returns for petitioners for 5 years, including 1994.

Petitioners filed a joint income tax return for 1994.  On it, they reported profits and losses on Schedules C, Profit or Loss From Business, for Medi-Task and the cabins.  Charlton used the gross revenue amounts from the lists Hawthorne prepared to prepare the return.  He did not review the bank statements.  He also used the lists that Hawthorne prepared to report Medi-Task's expenses.  He decided how to report the expenses on part II of Schedule C for Medi-Task; e.g., as advertising, legal and professional services, travel and meals, utilities, wages, and other expenses.

Petitioners reported that the Medi-Task income was divided equally between themselves for self-employment tax purposes.

Petitioners reported that Charlton had $62,135 in wages for

1994. They reported that Medi-Task had gross receipts and gross income of $147,782, total expenses of $117,588, and net profit of $30,194. Petitioners underreported 1994 gross receipts for Medi-Task by $22,601 and did not deduct $2,050 of Medi-Task expenses. They reported that they had no income from the cabins and $27,724 in expenses. Hawthorne examined parts of the 1994 return, such as the children's names and Social Security numbers and child care credits, but otherwise accepted the return that Charlton prepared.

E.   The Divorce

Petitioners separated in 1995, after they filed their 1994 return, and were divorced in 1996. Under the divorce settlement, Charlton received the rental cabin property and Hawthorne received Medi-Task. As required by the divorce settlement, Charlton deposited petitioners' 1994 refund check for $4,453 in a joint bank account at Texas Bank in Burnet, Texas, on June 2, 1995. Charlton used some of the 1994 refund to pay his personal expenses.

OPINION

A.   Whether All Medi-Task Income Is Attributable to Hawthorne for Self-Employment Tax Purposes

Charlton contends that the Medi-Task income should be divided equally between him and Hawthorne for self-employment tax purposes. Respondent and Hawthorne contend that all of the Medi-Task income is attributable to Hawthorne and that the self-

employment tax reported by petitioners for 1994 should be increased by $6,962.

Self-employment tax for a husband and wife filing a joint return is the sum of the taxes computed on the self-employment income of each spouse. See sec. 6017. All of the gross income and deductions from a trade or business over which one spouse exercises substantially all of the management and control are attributable to that spouse. See sec. 1402(a)(5)(A). For these purposes, "management and control" means actual management and control even if management and control is imputed to the other spouse under community property laws. Sec. 1.1402(a)-8(a), Income Tax Regs.

Charlton contends that he and Hawthorne jointly operated Medi-Task and that Medi-Task was a partnership or should be treated as one. We disagree. Hawthorne managed Medi-Task and performed most of its day-to-day operations. Charlton had a full-time job until September 1994, and he also renovated cabins in 1994. He did not devote much time to Medi-Task. We conclude that all of the Medi-Task income in 1994 is attributable to Hawthorne for self-employment tax purposes.

B. <u>Whether Petitioners' 1994 Expenses for the Cabins Were Preoperational Startup Expenses</u>

Charlton contends that petitioners may deduct $27,724 for supplies, taxes, travel, utilities, legal and professional

services, and car and truck expenses for their cabin rental activity for 1994 under section 162. We disagree.

Generally, a taxpayer may not deduct startup expenses. See sec. 195(a). A startup expenditure is any amount:

(A) paid or incurred in connection with--

(i) investigating the creation or acquisition of an active trade or business, or

(ii) creating an active trade or business, or

(iii) any activity engaged in for profit and for the production of income before the day on which the active trade or business begins, in anticipation of such activity becoming an active trade or business, and

(B) which, if paid or incurred in connection with the operation of an existing active trade or business (in the same field as the trade or business referred to in subparagraph (A)), would be allowable as a deduction for the taxable year in which paid or incurred. [Sec. 195(c).]

Petitioners incurred these expenses before the cabin rental activity became an active trade or business. Charlton renovated the cabins in 1994 but did not rent them or offer them for rent until 1998. The cabin rental activity was not an active trade or business in 1994. Thus, we conclude that the claimed expenses were nondeductible startup expenses.

C.  Innocent Spouse Issues

1.  Procedural Status of Innocent Spouse Issues

Petitioners each asserted in their petitions that they qualify for relief as an innocent spouse. The statutory provision providing relief for innocent spouses in effect when

the petitions were filed, section 6013(e), was repealed and replaced before trial by section 6015. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201, 112 Stat. 685, 734. As a result, neither petitioner referred to section 6015 in the petitions filed in these cases.

At trial, the parties consented to treating the petitions as elections by Charlton and Hawthorne for relief under section 6015(b)(1)(E) (procedures for relief from joint liability applicable to all joint filers) and section 6015(c)(1) (procedures to limit liability for divorced and separated taxpayers).

Respondent contends that we lack jurisdiction to decide whether Hawthorne is entitled to equitable relief under section 6015(f).[2] We deem petitioners to have amended their petitions to claim relief under section 6015(b) and (c), and we treat Hawthorne's request for relief under section 6015(f) as an amendment to her petition, seeking our review of her entitlement to relief under that subsection.

---

[2] Hawthorne contended at trial that she was entitled to relief under sec. 6015(b) and (c). She now concedes that relief is not available to her under sec. 6015(b) and (c).

2.  <u>Whether Charlton Is Entitled to Relief From Joint and
    Several Liability for Income Tax for 1994 Under Section
    6015(b)</u>

Charlton contends that he is entitled to relief from joint
and several liability for income tax for 1994 under section
6015(b).

Section 6015(b)(1) provides that if:

> (A) a joint return has been made for a taxable
> year;
>
> (B) on such return there is an understatement of
> tax attributable to erroneous items of one
> individual filing the joint return;
>
> (C) the other individual filing the joint return
> establishes that in signing the return he or she
> did not know, and had no reason to know, that
> there was such understatement;
>
> (D) taking into account all the facts and
> circumstances, it is inequitable to hold the other
> individual liable for the deficiency in tax for
> such taxable year attributable to such
> understatement; and
>
> (E) the other individual elects (in such form as
> the Secretary may prescribe) the benefits of this
> subsection not later than the date which is 2
> years after the date the Secretary has begun
> collection activities with respect to the
> individual making the election,

then the other individual shall be relieved of
liability for tax (including interest, penalties, and
other amounts) for such taxable year to the extent such
liability is attributable to such understatement.

Respondent concedes that Charlton qualifies under section
6015(b)(1)(A) because he filed a joint Federal income tax return

for 1994, and section 6015(b)(1)(E) because he elected to seek relief not later than 2 years after collection activities began.

Section 6015(b)(1)(C) requires that in signing the return the individual seeking relief did not know and had no reason to know of the understatement. Charlton contends that he did not know and had no reason to know of the understatement attributable to Medi-Task because he had no control over Medi-Task's finances and was busy with his other business interests. We disagree.

Under prior law (former section 6013(e)(1)(C)), in a case of omitted income, a spouse seeking relief was not permitted to turn a blind eye to facts that were available to him or her to avoid liability as an innocent spouse. See McCoy v. Commissioner, 57 T.C. 732, 734 (1972). Similarly, a taxpayer who prepares a return is not relieved of the duty to prepare an accurate return if the taxpayer relies on summarized information provided by the taxpayer's spouse when information upon which the summary is based is available to the taxpayer.

Charlton was generally familiar with Medi-Task. Hawthorne gave him the bank statements respondent later used in determining Medi-Task's income for 1994, Forms 1099 and W-2, and a computer-generated expense list. Charlton had unfettered access to Medi-Task's financial records. We conclude that Charlton had reason to know of Medi-Task's understatement of income. Thus, Charlton

does not qualify for relief as an innocent spouse under section 6015(b)(1).

D.  Whether Charlton Qualifies for Limitation of His Liability for Petitioners' 1994 Income Tax Under Section 6015(c)

Charlton contends that he qualifies for limitation of liability for petitioners' 1994 income tax under section 6015(c)[3]

---

[3] Sec. 6015(c) provides:

SEC. 6015(c).  Procedures to Limit Liability for Taxpayers No Longer Married or Taxpayers Legally Separated or Not Living Together.--

(1)  In general.--Except as provided in this subsection, if an individual who has made a joint return for any taxable year elects the application of this subsection, the individual's liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such deficiency properly allocable to the individual under subsection (d).

*    *    *    *    *    *    *    *

(3)  Election.--

(A)  Individuals eligible to make election.--

(i)  In general.--An individual shall only be eligible to elect the application of this subsection if–

(I) at the time such election is filed, such individual is no longer married to, or is legally separated from, the individual with whom such individual filed the joint return to which the election relates; or

(II) such individual was not a
(continued...)

for the portion of the deficiency relating to Medi-Task.

Respondent and Hawthorne contend that he does not.  Hawthorne

makes no arguments that substantially differ from respondent's on

this point.  We agree with Charlton.

To be eligible for relief under section 6015(c), the

individual seeking relief must no longer be married to, or must

---

[3](...continued)

member of the same household as the individual with whom such joint return was filed at any time during the 12-month period ending on the date such election is filed.

(ii)  Certain taxpayers ineligible to elect.--If the Secretary demonstrates that assets were transferred between individuals filing a joint return as part of a fraudulent scheme by such individuals, an election under this subsection by either individual shall be invalid (and section 6013(d)(3) shall apply to the joint return).

(B)  Time for election.--An election under this subsection for any taxable year shall be made not later than 2 years after the date on which the Secretary has begun collection activities with respect to the individual making the election.

(C)  Election not valid with respect to certain deficiencies.--If the Secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subjection (d), such election shall not apply to such deficiency (or portion).  This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress.

be legally separated from, the individual with whom he or she filed the joint return and must have elected the applicability of section 6015(c) not later than 2 years after the date on which collection activity began. See sec. 6015(c)(3).

An electing spouse bears the burden of proving how much of any deficiency is allocable to him or her. See sec. 6015(c)(2). An election is not valid if respondent shows that the individual making the election had actual knowledge when signing the return of any "item" giving rise to a deficiency (or portion thereof) which is not allocable to the electing individual. See sec. 6015(c)(3)(C). The only Medi-Task item causing a deficiency in this case is omitted income.

We have concluded that Charlton should have known of the omitted income because he knew of and had access to correct information about Medi-Task. See par. C-2, above. However, that does not mean that he actually knew of the Medi-Task omitted income. Charlton did not check Medi-Task's bank records against the lists of Medi-Task revenue that Hawthorne prepared and gave him. The lists Hawthorne gave Charlton are not in the record. Charlton testified that he did not know of the omitted income. We have no reason not to believe him. We conclude that respondent has not shown that Charlton had actual knowledge of the item causing the deficiency, and that Charlton qualifies for

relief under section 6015(c).  Thus, the procedures in section

6015(d) to allocate items between Hawthorne and Charlton apply.[4]

_____

    [4]  Sec. 6015(d) provides in part:

SEC. 6015(d).  Allocation of Deficiency.--For purposes
of subsection (c)--

        (1)  In general.--The portion of any deficiency on
        a joint return allocated to an individual shall be
        the amount which bears the same ratio to such
        deficiency as the net amount of items taken into
        account in computing the deficiency and allocable
        to the individual under paragraph (3) bears to the
        net amount of all items taken into account in
        computing the deficiency.

        (2)  Separate treatment of certain items.--If a
        deficiency (or portion thereof) is attributable to
        --

            (A)  the disallowance of a credit; or

            (B)  any tax (other than tax imposed by
            section 1 or 55) required to be included with
            the joint return,

and such item is allocated to one individual under
paragraph (3), such deficiency (or portion) shall be
allocated to such individual.  Any such item shall not
be taken into account under paragraph (1).

        (3)  Allocation of items giving rise to the
        deficiency. For purposes of this subsection--

            (A)  In general.  Except as provided in
            paragraphs (4) and (5), any item giving rise
            to a deficiency on a joint return shall be
            allocated to individuals filing the return in
            the same manner as it would have been
            allocated if the individuals had filed
            separate returns for the taxable year.

            (B)  Exception where other spouse benefits.
            Under rules prescribed by the Secretary, an
                                        (continued...)

For purposes of section 6015(c), an item giving rise to a deficiency on a joint return is generally allocated as if the individuals had filed separate returns.  See sec. 6015(d)(3)(A).

Respondent contends that the parties should perform the computations under section 6015(d) as part of the Rule 155 computations.  Neither Charlton nor Hawthorne objects to using that procedure.  We agree with respondent, and we will so order.

E.    Whether the Tax Court Has Jurisdiction To Review a Taxpayer's Request for Equitable Relief Under Section 6015(f)

Respondent contends that we lack jurisdiction to decide whether the Commissioner properly denied relief to a taxpayer under section 6015(f).  We disagree, for reasons stated in Butler v. Commissioner, 114 T.C. __, __ (2000) (slip op. at 18-26).

Hawthorne and respondent have apparently suspended any activity relating to Hawthorne's claim under section 6015(f) while this case is pending.  If the Secretary denies her

---

[4](...continued)
                item otherwise allocable to an individual
                under subparagraph (A) shall be allocated to
                the other individual filing the joint return
                to the extent the item gave rise to a tax
                benefit on the joint return to the other
                individual.

                (C)  Exception for fraud.  The Secretary may
                provide for an allocation of any item in a
                manner not prescribed by subparagraph (A) if
                the Secretary establishes that such
                allocation is appropriate due to fraud of one
                or both individuals.

application for relief under section 6015(f), Hawthorne may file a motion as part of this docketed case to seek our review of the Secretary's denial within a time period to be provided by order of this Court.  We will delay entry of decision until Hawthorne and respondent report the status of the Secretary's action under section 6015(f).

To reflect the foregoing,

<u>Appropriate orders</u>

<u>will be issued</u>.