T.C. Memo. 2019-138

UNITED STATES TAX COURT

LORI D. SLEETH, Petitioner, AND DAVID T. SLEETH, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10988-18.                    Filed October 15, 2019.

<u>J. William Rose, Jr.</u>, and <u>Sarah E. Hoffmann</u>, for petitioner.

David T. Sleeth, pro se.

<u>Jerrika C. Anderson</u>, <u>Horace Crump</u>, and <u>Edwin B. Cleverdon</u>, for

respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Petitioner seeks relief from joint and several tax liability

(innocent spouse relief) associated with joint tax returns for the years 2008, 2009,

[*2] and 2010 under section 6015(f).[1]  For the reasons explained herein, we uphold respondent's disallowance of this relief.

FINDINGS OF FACT

The stipulated facts are included by this reference.  When she filed her petition in this case, petitioner resided in Alabama.  Her petition seeks review of respondent's denial of innocent spouse relief under section 6015(f).  The joint returns for the three years at issue all reflect tax liabilities that were reported but not paid with the returns.  Petitioner submitted Form 8857, Request for Innocent Spouse Relief, which respondent received on February 28, 2017.  Her former spouse intervened and supported petitioner's request for relief, as he also does in this case.[2]  The request began an administrative review under section 6015.  Respondent denied the request in a notice of determination, and petitioner timely filed a petition for review by this Court pursuant to section 6015(e).

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]If a spouse petitions the Court for sec. 6015 relief, the nonrequesting spouse has a right to intervene under sec. 6015(e)(4).  Rule 325; Van Arsdalen v. Commissioner, 123 T.C. 135, 138 (2004).  By doing so, the intervenor becomes a party.  Tipton v. Commissioner, 127 T.C. 214, 217 (2006).

**[*3]**   We decide this case pursuant to section 6015(e)(7) as the administrative record has been stipulated into evidence and the testimony taken at trial was not available in the administrative record.

The Sleeths were married in December 1988.  They first resided in Dallas, Texas.  Petitioner has a high school diploma and attended college for three years.  The Sleeths' returns were prepared by a certified public accountant who was a longtime friend.

Intervenor has a juris doctor degree and was a practicing attorney until 1993.  In 1993 he began to pursue his dream to be a medical doctor.  The Sleeths separated at times while intervenor was in medical school.  Intervenor began his medical residency in 2000, and it continued through December 31, 2003.

The Sleeths jointly purchased a residence on Tomahawk Circle in Guntersville, Alabama (Tomahawk house), in October 2003 and moved in soon after.  Intervenor began full-time employment with the Marshall Hospital System in Guntersville, Alabama, in January 2004.  After he obtained employment as a physician, he and petitioner purchased a Cessna airplane and a boat.  In August 2005 intervenor also purchased a townhouse for $105,000 near a marina at Lake Guntersville, approximately 10 miles from the Tomahawk house, and soon thereafter quitclaimed it to petitioner.  In 2006 petitioner and intervenor again

[*4] began to live apart, and petitioner lived in the townhouse. They did not live together during the years at issue but continued to file joint returns.

The Sleeths were unable to pay the amount shown as due on their 2005 joint return and entered into an installment agreement. Petitioner was aware that the 2005 tax liability was not timely paid and was aware of the installment agreement. The Sleeths filed a request for an extension for their 2006 joint tax return; the extension request indicated there was a balance due, which terminated the installment agreement for 2005. In early 2008 intervenor told their accountant to request an extension for the 2007 tax return and told the accountant that he was not able to pay the amount due by the return's due date.

In late 2007 or early 2008 the Sleeths refinanced the mortgage on the Tomahawk house as a "jumbo" loan, and in 2008 they listed it for sale. The Sleeths filed their 2008 joint tax return late. Petitioner signed the 2008 joint return on March 7, 2011. The 2008 return showed unpaid tax of $112,376, an estimated tax penalty of $3,517, interest of $9,721, a late payment penalty of $12,361, and a late filing penalty of $25,285, for a total amount due of $163,260. The 2008 return did not show any payment of tax through withholding, estimated tax payments, or otherwise.

**[*5]**   On March 7, 2011, the Sleeths also filed their 2009 joint tax return late. The 2009 return showed tax due of $112,130, an estimated tax penalty of $2,684, interest of $3,970, a late filing penalty of $25,230, and a late payment penalty of $6,167, for a total amount due of $150,181.  As with 2008, the 2009 return did not show any payment of tax through withholding, estimated tax payments, or otherwise.  The Sleeths timely filed a joint tax return for 2010.  The 2010 return showed tax due of $129,799 and an estimated tax penalty of $2,784, for a total of $132,583.  It did not show any payment of tax through withholding, estimated tax payments, or otherwise.

Intervenor did not tell petitioner that he did not have the funds to pay the tax due on the 2008, 2009, and 2010 returns when she signed the returns.  Petitioner made no inquiry of intervenor as to whether the tax would be paid because she "assumed" it would be paid.  Neither petitioner nor intervenor has paid the tax liabilities for the years at issue.  The Sleeths continued to file joint tax returns through 2017.

Intervenor ended his employment with the Marshall Hospital System around August 2011.  Between December 2011 and June 2018 he worked temporarily at approximately 15 hospitals in various locations in Alabama.  The Tomahawk

**[\*6]** house was repossessed in 2012. Petitioner had reason to know it would be repossessed given intervenor's inability to sell it.

Petitioner's Form 8857 indicated that she had monthly income from wages, partnership distributions, and music royalties of $21,127 (this amount includes her husband's income) and monthly expenses of $20,737. On March 5, 2018, respondent issued a notice of determination to petitioner notifying her that he denied her request for innocent spouse relief under section 6015(f) for 2008, 2009, and 2010. The notice stated that relief was not granted because "[y]ou didn't have a reasonable expectation that the person you filed the joint return with would or could pay the tax. The information you submitted didn't show that you would experience economic hardship if we didn't grant relief."

The Sleeths divorced in August 2018. Petitioner received $51,000 pursuant to the divorce agreement. The divorce agreement provides that intervenor shall file an intervention in petitioner's innocent spouse action in Tax Court and shall concede therein that she is not the responsible party for the tax liabilities arising from previous years. Intervenor did not abuse petitioner during their marriage, and she did not receive a substantial benefit from the failure to pay tax. She has been in compliance with her tax obligations after the years at issue. She was not in poor physical or mental health at any time relevant to this case.

**[*7]** OPINION

Section 6015(f) provides for innocent spouse relief (equitable relief), under procedures prescribed by the Secretary, if (1) taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for any unpaid tax or deficiency (or any portion of either) and (2) relief is not available to that individual under subsection (b) or (c). The second requirement is met as there are no deficiencies but rather unpaid assessments. For consideration of the first requirement the Commissioner issued Rev. Proc. 2013-34, 2013-43 I.R.B. 397, which the parties apply in this case and this Court uses in litigated cases although its use is not mandatory. See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011).

Petitioner bears the burden of establishing that she is entitled to relief. See Rule 142(a). Our review of respondent's determination is de novo. Sec. 6015(e)(7); Porter v. Commissioner, 132 T.C. 203, 210 (2009). Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399, specifies threshold conditions that must be satisfied before a request for equitable relief will be considered. The parties do not dispute that the threshold conditions have been met.

A taxpayer who seeks equitable relief under section 6015(f) and meets the threshold conditions can seek relief under the factors enumerated in Rev. Proc.

**[*8]** 2013-34, sec. 4.03, 2013-43 I.R.B. at 400. The factors are a nonexclusive list; no one factor or a majority of factors necessarily determines the outcome. The degree of importance of each factor varies depending on the requesting spouse's facts and circumstances.

Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400-403, provides, in relevant part, as follows:

(a) <u>Marital status</u>. Whether the requesting spouse is no longer married to the nonrequesting spouse as of the date the Service makes its determination. * * * If the requesting spouse is no longer married * * *, this factor will weigh in favor of relief. * * *

\* \* \* \* \* \* \*

(b) <u>Economic hardship</u>. Whether the requesting spouse will suffer economic hardship if relief is not granted. For purposes of this factor, an economic hardship exists if satisfaction of the tax liability in whole or in part will cause the requesting spouse to be unable to pay reasonable basic living expenses. * * * If denying relief from the joint and several liability will not cause the requesting spouse to suffer economic hardship, this factor will be neutral.

\* \* \* \* \* \* \*

(c) <u>Knowledge or reason to know</u>.

\* \* \* \* \* \* \*

(ii) <u>Underpayment cases</u>. In the case of an income tax liability that was properly reported but not paid, whether, as of the date the return was filed * * *, the requesting spouse knew or had reason to know that the nonrequesting spouse would not or could not pay the

[*9]  tax liability at that time or within a reasonable period of time after the filing of the return.  This factor will weigh in favor of relief if the requesting spouse reasonably expected the nonrequesting spouse to pay the tax liability reported on the return.  * * *

This factor will weigh against relief if, based on the facts and circumstances of the case, it was not reasonable for the requesting spouse to believe that the nonrequesting spouse would or could pay the tax liability shown on the return.  * * *

*     *     *     *     *     *     *

(iv) Abuse by the nonrequesting spouse.  * * * [A]buse may result in certain factors weighing in favor of relief when otherwise the factor may have weighed against relief.  * * *

(d) Legal obligation.  Whether the requesting spouse or the nonrequesting spouse has a legal obligation to pay the outstanding Federal income tax liability.  * * *

(e) Significant benefit.  Whether the requesting spouse significantly benefitted from the unpaid income tax liability or understatement.  * * * If * * * neither spouse received a significant benefit, then this factor is neutral.  * * *

(f) Compliance with income tax laws.  Whether the requesting spouse has made a good faith effort to comply with the income tax laws in the taxable years following the taxable year or years to which the request for relief relates.

(i) If the requesting spouse is compliant * * * after being divorced from the nonrequesting spouse, then this factor will weigh in favor of relief.  * * *

*     *     *     *     *     *     *

[*10]       (g) <u>Mental or physical health</u>.  Whether the requesting spouse was in poor physical or mental health.  * * * If the requesting spouse was in neither poor physical nor poor mental health, this factor is neutral.

For the factors involving abuse by the nonrequesting spouse and the requesting spouse's mental or physical health, the facts of this case indicate they are neutral.  Petitioner benefited from intervenor's decision to buy her a condominium, but respondent did not assert this was a significant benefit.  The lack of a significant benefit from the unpaid tax is a favorable factor for petitioner.

For the marital status factor, Rev. Proc. 2013-34, sec. 4.03(2)(a)(iv), 2013-43 I.R.B. at 400, provides that the requesting spouse will be treated as being no longer married to the nonrequesting spouse if the requesting spouse "has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date the Service makes its determination." Petitioner and intervenor were not members of the same household for the 12-month period before the issuance of the notice, and they subsequently divorced.  Therefore, the marital status factor weighs in favor of relief.

For the economic hardship factor, Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401, states:

**[\*11]**     In determining whether the requesting spouse would suffer economic hardship if relief is not granted, the Service will compare the requesting spouse's income to the Federal poverty guidelines * * * for the requesting spouse's family size and will determine by how much, if at all, the requesting spouse's monthly income exceeds the spouse's reasonable basic monthly living expenses. This factor will weigh in favor of relief if the requesting spouse's income is below 250% of the Federal poverty guidelines, unless the requesting spouse has assets out of which the requesting spouse can make payments towards the tax liability and still adequately meet the requesting spouse's reasonable basic living expenses. If the requesting spouse's income exceeds 250% of the Federal poverty guidelines, this factor will still weigh in favor of relief if the requesting spouse's monthly income exceeds the requesting spouse's reasonable basic monthly living expenses by $300 or less * * *

Petitioner's income without her husband's income would support an economic hardship claim, but she has equity in her townhouse and could make at least some partial payment on the liabilities. Therefore, we find this factor neutral.

Rev. Proc. 2013-34, sec. 4.03(2)(c)(iii), 2013-43 I.R.B. at 402, states:

The facts and circumstances that are considered in determining whether the requesting spouse had reason to know of an understatement, or reason to know whether the nonrequesting spouse could or would pay the reported tax liability, include, but are not limited to, the requesting spouse's level of education, any deceit or evasiveness of the nonrequesting spouse, the requesting spouse's degree of involvement in the activity generating the income tax liability, the requesting spouse's involvement in business or household financial matters, the requesting spouse's business or financial expertise, and any lavish or unusual expenditures compared with past spending levels.

[*12] Taxpayers are generally presumed to have constructive knowledge of information reported on returns that they signed. Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), aff'g T.C. Memo. 1992-228. In addition, taxpayers have a duty to inquire into the amounts of their tax liabilities. Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989); Butler v. Commissioner, 114 T.C. 276, 284 (2000); Wiener v. Commissioner, T.C. Memo. 2008-230. Failure to fulfill the duty to inquire may constitute reason to know that the tax would not be paid. Motsko v. Commissioner, T.C. Memo. 2006-17; Feldman v. Commissioner, T.C. Memo. 2003-201, aff'd, 152 F. App'x 622 (9th Cir. 2005). Failure to fulfill the duty to inquire may also occasion imputed knowledge. Hayman v. Commissioner, 992 F.2d at 1262. Innocent spouse relief is not available to those who choose to ignore information in their possession. Charlton v. Commissioner, 114 T.C. 333, 340 (2000); Bokum v. Commissioner, 94 T.C. 126, 145-146 (1990), aff'd, 992 F.2d 1132 (11th Cir. 1993).

In 2011 petitioner agreed to be liable for tax, interest, and penalties of almost half a million dollars when she signed the returns for the years at issue. A review of the returns would have told her that intervenor had not paid estimated tax for the years at issue. She also knew that intervenor had been unable to timely pay the 2005 income tax. She also knew that intervenor had been trying for

**[*13]** several years to sell the Tomahawk house and the house was subject to a large mortgage. Under these circumstances, when she signed the returns, petitioner had a duty to do more than assume intervenor would pay the tax owed. Although intervenor did not tell petitioner that he was unable to pay the tax liabilities, he also did not tell her that he was able to pay them. Her assumption that intervenor would pay the tax is unreasonable, and her alleged belief that intervenor would pay the tax is not credible.

With regard to the legal obligation factor, Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402, states as follows:

> [A] legal obligation is an obligation arising from a divorce decree or other legally binding agreement. This factor will weigh in favor of relief if the nonrequesting spouse has the sole legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement. This factor, however, will be neutral if the requesting spouse knew or had reason to know, when entering into the divorce decree or agreement, that the nonrequesting spouse would not pay the income tax liability. * * *

On the basis of the divorce agreement intervenor was willing to assume the liabilities, but his willingness to do so does not end our inquiry. We find petitioner had reason to know intervenor would not pay the liabilities. This therefore is a neutral factor.

**[*14]** Regarding the compliance with income tax laws factor, petitioner has been in compliance with her obligation to file and pay income tax for all tax years since the years at issue. Therefore, this factor weighs in favor of relief.

The factors that weigh in favor of relief are marital status, the lack of significant benefit, and compliance with income tax laws after 2010. The factor that weighs against relief is the knowledge or reason to know factor. Ultimately, we find that petitioner's unwillingness to confront the financial problems she and intervenor faced weighs strongly against relief. She cooperated in intervenor's over three-year practice of simply not paying tax.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.