T.C. Memo. 2019-145

UNITED STATES TAX COURT

JANE M. LASSEK, Petitioner, AND MICHAEL E. SMITH, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25395-16.                    Filed October 28, 2019.

<u>Albert B. Kerkhove</u> and <u>Howard N. Kaplan</u>, for petitioner.

Michael E. Smith, pro se.

<u>Britton G. Wilson</u> and <u>Douglas S. Polsky</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  Pursuant to section 6015(e)(1),[1] petitioner seeks review of

respondent's determination that she is not entitled to relief from joint and several

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times.

[*2] liability under section 6015(b), (c), or (f) for 2011 and 2012 with respect to joint Federal income tax returns that she filed with her former spouse, intervenor. Respondent concedes and petitioner agrees that she is entitled to relief from joint and several liability under section 6015(c) for 2011. However, intervenor opposes relief. The Court holds that petitioner is entitled to relief under section 6015(c) for 2011 and is not entitled to relief under section 6015(b), (c), or (f) for 2012.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The first stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference. The stipulation of facts and the exhibits replicate the administrative record at the time of the determination.[2] Petitioner resided in Nebraska when she

---

[2]The Court held trial in this case before the enactment of sec. 6015(e)(7), which provides:

> (7) Standard and scope of review.--Any review of a determination made under this section shall be reviewed de novo by the Tax Court and shall be based upon--
>
> (A) the administrative record established at the time of the determination, and
>
> (B) any additional newly discovered or previously unavailable evidence.

This provision is effective for "petitions or requests filed or pending on or after the

(continued...)

**[*3]** timely filed her petition; intervenor resided in Nebraska when he intervened in this case.

Background

Petitioner and intervenor were married in 1989. The couple owned a house in Council Bluffs, Iowa. Intervenor filed for divorce in August 2013, and their divorce became final on December 16, 2013. During their marriage they had one son, who during the years in issue attended school in Annapolis, Maryland.

Petitioner has no formal education in business, finance, or accounting but has taken some college classes toward a psychology degree. Petitioner worked for a telephone company for over 38 years, including the years in issue, and participated in the company's section 401(k) retirement plan.

Intervenor attended a trade school and worked for the same telephone company for 33 years, including the years in issue. Intervenor also participated in the telephone company's section 401(k) retirement plan.

---

[2](...continued)
date of enactment of this Act." Taxpayer First Act, Pub. L. No. 116-25, sec. 1203(b), 133 Stat. at 988 (2019). Because the trial evidence was merely cumulative of what was already included in the administrative record and previously unavailable evidence of petitioner's current financial status, sec. 6015(e)(7) does not affect the outcome of this case. As a result, the Court has not addressed the effect of sec. 6015(e)(7).

**[*4]** Throughout their marriage petitioner and intervenor maintained a joint bank account that was used to pay the mortgage, insurance, and utilities for the family home; groceries; and other household necessities. Their telephone company salaries were automatically deposited into the joint bank account. Intervenor also maintained a separate bank account. Intervenor had a hobby of buying cars, fixing them, and selling them, and he used his separate bank account and credit cards to fund his hobby.

Throughout their marriage and until August 2012 intervenor managed their personal finances by paying bills, managing their joint bank account and his separate bank account, and preparing and filing their Federal income tax returns. Before August 2012 intervenor had unilaterally secured a line of credit on their family home. Petitioner did not discover the debt until she and intervenor applied for a second mortgage and were required to pay off the line of credit first. In August 2012 petitioner took over managing their joint bank account after she received several unexpected overdraft notices from their financial institution.

Through her employment at the telephone company petitioner received a discount on their household phone bill. Petitioner also gave intervenor cash to deposit into his separate bank account, from which the phone bill was automatically paid each month. Before 2012 petitioner discovered that her

**[*5]** discount was suspended after three instances of nonpayment because of insufficient funds in intervenor's separate account.

Intervenor maintained several credit cards. Petitioner was an authorized card holder on intervenor's American Express account. Petitioner primarily used the American Express credit card to buy groceries, gas, and other household necessities. Intervenor used the American Express credit card to buy airline tickets for himself, petitioner, and their son and to pay for hotel rooms and food while on their trips. In 2011 petitioner and intervenor took a trip together to Annapolis to visit their son, and intervenor took other trips to Annapolis and Las Vegas without petitioner. In 2012 petitioner and intervenor took a trip together and each took a trip individually to Annapolis to visit their son. Intervenor also used the American Express credit card to buy cars and car parts for his hobby.

In 2011 and 2012 intervenor regularly gambled on Friday nights at one or more of the casinos in Council Bluffs, Iowa.

Tax Liabilities

2011 Understatement

In 2011 petitioner took a $15,000 distribution from her section 401(k) retirement plan account. Unknown to petitioner, intervenor also took a $46,477

[*6] distribution from his section 401(k) retirement plan account. Petitioner deposited her distribution into the joint bank account; intervenor did not deposit his distribution into the joint bank account.

Petitioner provided intervenor with her 2011 Form W-2, Wage and Tax Statement, and her 2011 Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. Intervenor then prepared their 2011 Form 1040, U.S. Individual Income Tax Return, using tax preparation software and filed their return electronically on April 16, 2012. Faced with a pending due date, intervenor electronically filed the joint return before petitioner had an opportunity to review it. The 2011 joint return correctly reported petitioner's section 401(k) distribution as taxable but incorrectly reported intervenor's section 401(k) distribution as nontaxable, resulting in an understatement.

On September 3, 2013, respondent issued petitioner and intervenor a notice of deficiency for 2011 determining a deficiency of $14,996 and an accuracy-related penalty of $3,026. The deficiency arose from intervenor's failure to report his $46,477 distribution as taxable and overreporting income tax withheld of $136 on petitioner's wage income or distribution. They did not petition the Court for a deficiency redetermination. Respondent subsequently assessed the deficiency and

[*7] the accuracy-related penalty and proceeded with collection action.  Petitioner concedes that she is liable for the overreported income tax withheld.

### 2012 Underpayment

In 2012 petitioner took an $11,000 taxable distribution from her section 401(k) retirement plan account, and intervenor took a $23,510 distribution from his section 401(k) retirement plan account, $23,461 of which was taxable. Petitioner provided intervenor her 2012 Forms W-2 and 1099-R.  Intervenor then prepared their 2012 Form 1040 reporting tax owed of $5,448.[3]  Petitioner and intervenor signed their 2012 joint return on April 15, 2013, and timely filed it without remitting a payment.  When they filed the 2012 joint return, they did not discuss how their tax liability would be paid.

### Petitioner's Request for Administrative Relief

On August 21, 2014, respondent issued petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, for the 2011 and 2012 tax liabilities (levy notice).[4]  In response to the levy notice petitioner timely

---

[3]The tax owed ($5,448) equals the total tax ($21,871) minus the total payments ($16,487) plus an estimated tax penalty ($64).

[4]Respondent proposed collecting by levy the assessed balances of $18,602.88 for 2011 and $5,523.57 for 2012, which amounts included interest and penalties.

**[*8]** filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing. As part of her reason for disagreeing with the proposed levy, petitioner checked the box for "My Spouse is Responsible" and filed a Form 8857, Request for Innocent Spouse Relief, requesting relief from joint and several liability under section 6015(b), (c), and (f) for 2011 and 2012.

In seeking relief from joint and several liability for 2011 and 2012 petitioner explained that she was not involved in preparing the returns other than providing her tax documents. Petitioner further explained that she did not review the joint returns before they were filed because intervenor "never asked * * * [her] to" and that she had no knowledge of the erroneous items on them.

Petitioner and intervenor's marital settlement agreement dated July 26, 2013, did not address any division of responsibility for debt, including any potential tax liabilities. The December 16, 2013, decree of dissolution stated that "[t]he parties have divided their debts and assets to their mutual satisfaction" and further that "there are no marital debts to be divided". The decree of dissolution did not address division of responsibility for any potential tax liabilities. On June 5, 2015, petitioner and intervenor sold their house in a short sale under threat of foreclosure.

**[\*9]**   On July 1, 2015, respondent made a preliminary determination that petitioner was entitled to partial relief for 2011 under section 6015(f). Respondent's determination proposed to grant petitioner relief of $17,995 and deny relief of $163 with respect to the 2011 tax liability.[5]   On July 1, 2015, respondent also made a preliminary determination that petitioner was entitled to partial relief for 2012 under section 6015(f).  Respondent determined that petitioner should be granted relief of $4,897 and denied relief of $487 with respect to the 2012 tax liability.[6]

On July 16, 2015, intervenor submitted a letter to respondent appealing the preliminary determinations.  Intervenor stated in his letter that petitioner was aware of the distributions and received a substantial benefit because the distributions were used to pay for the mortgage on the family home, vacations, and other household items.

On August 10, 2015, petitioner's request for relief for 2011 and 2012 was referred to the Internal Revenue Service Office of Appeals (Appeals) in

---

[5]These amounts do not add up to the 2011 assessed balance ($18,602.88) but rather the deficiency ($14,996) and the accuracy-related penalty ($3,026) plus the overreported withholding ($136).

[6]These amounts do not add up to the 2012 assessed balance ($5,523.57) but rather the reported tax owed on the return ($5,448) minus the estimated tax penalty ($64).

[*10] Covington, Kentucky. On January 22, 2016, petitioner's request was transferred to Appeals in Omaha, Nebraska, to offer petitioner a face-to-face meeting.

On January 28, 2016, petitioner executed a declaration, subsequently providing it to Appeals to refute intervenor's claims. Petitioner explained in her declaration that she had obtained account transcripts and discovered the 2011 tax liability arose from intervenor's incorrectly reported section 401(k) distribution and the 2012 tax liability from an underpayment of tax. Petitioner requested relief from the portion of the 2012 underpayment attributable to intervenor's income.

On March 7, 2016, Appeals received a letter from intervenor wherein he disagreed with petitioner's declaration and provided copies of his: section 401(k) retirement plan account statement, Federal direct plus loan for parents account statement, and American Express credit card statements for 2011 and 2012. In his letter intervenor argued that petitioner should be responsible for the tax liability because he was responsible for credit card debt incurred during the marriage.

On March 24, 2016, petitioner executed a second declaration and subsequently provided it to Appeals refuting intervenor's claims from his July 16, 2015, letter. Petitioner stated that she did not receive a substantial benefit from intervenor's distributions because her distributions and salary were deposited into

[*11] the joint bank account and were used to pay for household expenses, the mortgage on the family home, and vacations. Petitioner also maintained that she was unaware that intervenor took a section 401(k) retirement plan distribution in 2011.

On Form 8857 petitioner reported total monthly income of $5,044 and total monthly expenses of $5,800. As of the time of trial petitioner's financial situation had improved and she conceded that she can pay her reasonable living expenses without economic hardship even if she is denied relief from joint and several liability.

On September 9, 2016, Appeals issued petitioner a final Appeals determination denying relief from joint and several liability under section 6015(c) for 2011 and 2012. Appeals denied relief for 2011 because petitioner "knew, or had reason to know, of the income or deductions that caused the additional tax". Appeals denied relief for 2012 because "relief * * * [was] not allowed on tax * * * [petitioner owed on her] own income or deductions". The final Appeals determination did not address petitioner's requests for relief under section 6015(b) or (f). Before trial respondent conceded that the Appeals officer applied the incorrect standard under section 6015(c) for 2011.

**[*12]**                                        OPINION

Generally, married taxpayers may elect to file joint Federal income tax

returns.  Sec. 6013.  Section 6013(d)(3) provides that if a joint return is filed each

spouse is jointly and severally liable for the entire tax due for that year.  Section

6015, however, provides exceptions to the general rule of joint and several

liability in limited circumstances.  Alt v. Commissioner, 119 T.C. 306, 311 (2002),

aff'd, 101 F. App'x 34 (6th Cir. 2004).

I.      Relief Under Section 6015(c) for 2011

One of the above-mentioned limited circumstances is set forth in section

6015(c).  Upon the taxpayer's election of its application, section 6015(c) limits a

spouse's liability to the portion of the deficiency properly allocable to that spouse

under section 6015(d).  In general, an item that gives rise to a deficiency on a joint

Federal income tax return will be allocated to each individual who files the joint

return in the same manner as that item would have been allocated had those

individuals filed separate returns.  Sec. 6015(d)(3)(A).

Before trial respondent conceded petitioner's entitlement to relief under

section 6015(c) for 2011.  The concession contemplates a section 6015(d)

allocation as stated in the preliminary determination dated July 1, 2015.  See supra

**[*13]** p. 9. Petitioner agrees with the section 6015(d) allocation. However, intervenor challenges petitioner's entitlement to section 6015(c) relief for 2011.

Intervenor contends petitioner knew about intervenor's 2011 section 401(k) retirement plan distribution and her knowledge of it disqualifies her from section 6015(c) relief. He also contends that petitioner may have had "reason to know" about the understatement of tax shown on the return. See, e.g., Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989); King v. Commissioner, 116 T.C. 198, 204 (2001). But a requesting spouse's "reason to know" of the item is not sufficient to deny relief under section 6015(c). If, as here, all of the other requirements of that section have been satisfied, then, as relevant here, the burden of proof is shifted to the Commissioner and relief is denied to the requesting spouse only if the Commissioner "demonstrates that * * * [the requesting spouse] had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency". Sec. 6015(c)(3)(C); see Charlton v. Commissioner, 114 T.C. 333, 341 (2000); Martin v. Commissioner, T.C. Memo. 2000-346, slip op. at 12-13.

An issue arises where the burden of proof shifts to the Commissioner in cases when the Commissioner favors granting relief and the nonrequesting spouse intervenes to oppose it. The Court has previously resolved this issue of burden

**[*14]** shifting by deciding the case on a preponderance of the evidence as presented by all three parties. See Hollimon v. Commissioner, T.C. Memo. 2015-157; Pounds v. Commissioner, T.C. Memo. 2011-202; Knight v. Commissioner, T.C. Memo. 2010-242; McDaniel v. Commissioner, T.C. Memo. 2009-137.

To determine whether the requesting spouse had actual knowledge, the Court looks to the surrounding facts and circumstances for "an actual and clear awareness (as opposed to reason to know)" of the items giving rise to the deficiency. Cheshire v. Commissioner, 115 T.C. 183, 195 (2000), aff'd, 282 F.3d 326 (5th Cir. 2002). The Court reviews de novo the administrative record established at the time of the determination.

Intervenor argues that petitioner was aware of his 2011 section 401(k) retirement plan distribution because intervenor used it to pay the mortgage and household expenses for the family home and vacations. However, the record does not support intervenor's position. Neither does it establish that petitioner had actual knowledge or a clear awareness at the time of filing their 2011 return on April 16, 2012, that intervenor took a distribution in 2011 or that his distribution was used to pay those household expenses. Although the return reported both distributions in full, it did not report intervenor's section 401(k) distribution as taxable. The record does not establish that petitioner and intervenor discussed the

[*15] items reported on the joint return or that petitioner had a meaningful opportunity to review the return before it was electronically filed.

The Court concludes that petitioner did not have actual knowledge of intervenor's 2011 section 401(k) retirement plan distribution, the item resulting in the understatement of income. Therefore, petitioner is entitled to relief from joint and several liability under section 6015(c) for 2011.[7]

II.    Relief Under Section 6015(f) for 2012

Section 6015(f) grants the Commissioner discretion to relieve an individual from joint and several liability where relief is not available under section 6015(b) or (c) if, taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency. Section 6015(b) and (c) applies only in the case of "an understatement of tax" or "any deficiency" in tax and does not apply in the case of an underpayment of tax reported on a joint return. Sec. 6015(b)(1)(B), (c)(1). When a liability arises from an underpayment of tax reported as due on a joint return, relief is available only under section 6015(f). See sec. 6015(b)(1)(B), (c)(1), (f)(1); Hopkins v. Commissioner, 121

_____

[7]Because petitioner conceded that she is not entitled to relief for the overreported withholding for 2011 and the Court finds that she is entitled to relief under sec. 6015(c), the Court will not address her requests for relief under sec. 6015(b) and (f) for 2011.

[*16] T.C. 73, 88 (2003). Here, the 2012 liability is the result of an underpayment, and petitioner seeks relief under section 6015(f).

As directed by section 6015(f), the Commissioner has prescribed procedures to determine whether a requesting spouse is entitled to equitable relief from joint and several liability. Those procedures are set forth in Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. 397, 399. Although the Court considers those procedures when reviewing the Commissioner's determination, the Court is not bound by them. Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Rogers v. Commissioner, T.C. Memo. 2018-53, at *112. The Court's determination ultimately rests on an evaluation of all the facts and circumstances. Porter v. Commissioner, 132 T.C. at 210.

Pursuant to Rev. Proc. 2013-34, sec. 4, the Commissioner conducts a multistep analysis when determining whether a requesting spouse is entitled to equitable relief under section 6015(f). Rev. Proc. 2013-34, supra, categorizes the requirements for relief as threshold or mandatory requirements, streamlined elements, and equitable factors. A requesting spouse must satisfy each threshold requirement to be considered for relief. See Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399. If the requesting spouse meets the threshold requirements, the Commissioner will grant equitable relief if the requesting spouse meets each

**[*17]** streamlined element.  See id. sec. 4.02, 2013-43 I.R.B. at 400.  Otherwise, the Commissioner will evaluate the equitable factors to determine whether equitable relief is appropriate.  See id. sec. 4.03, 2013-43 I.R.B. at 400.

A.    Threshold Requirements

The requesting spouse must meet seven threshold requirements to be considered for relief under section 6015(f).  Rev. Proc. 2013-34, sec. 4.01.  The parties agree, and the Court finds, that petitioner meets the threshold requirements for 2012.

B.    Streamlined Elements

If the threshold requirements are satisfied, Rev. Proc. 2013-34, sec. 4.02, describes circumstances in which the Commissioner will make a streamlined determination granting equitable relief under section 6015(f).  To be eligible for a streamlined determination, the requesting spouse must establish that she will suffer economic hardship if relief is not granted under guidelines provided in Rev. Proc. 2013-34, sec. 4.02(2).  Id. sec. 4.03(2)(b), 2013-43 I.R.B. at 401.  Petitioner conceded at trial that she would not suffer economic hardship if relief is not granted.  Therefore, petitioner is ineligible for a streamlined determination, in accordance with Rev. Proc. 2013-34, sec. 4.02.

**[\*18]** C.     Equitable Factors

Rev. Proc. 2013-34, sec. 4.03, "applies to a requesting spouse who requests relief under * * * section 6015(f), and who satisfies the threshold conditions of section 4.01, but does not qualify for streamlined determinations granting relief under section 4.02." Id. sec. 4.03(1). Rev. Proc. 2013-34, sec. 4.03(2), lists the following seven nonexclusive factors to be considered in determining whether, taking into account all the facts and circumstances, equitable relief under section 6015(f) should be granted: (1) the current marital status of the spouses, (2) whether the requesting spouse will suffer any economic hardship if relief is not granted, (3) whether the requesting spouse knew or had reason to know of the item giving rise to the underpayment, (4) whether either spouse has a legal obligation to pay the outstanding Federal income tax liability, (5) whether the requesting spouse significantly benefited from the underpayment, (6) whether the requesting spouse has made a good faith effort to comply with the income tax laws in the years following the years for which relief is sought, and (7) whether the requesting spouse was in poor mental or physical health when the returns in issue were filed, when the request for relief was made, or at the time of trial. See Pullins v. Commissioner, 136 T.C. at 454.

[*19] In making a determination under section 6015(f), the Court considers the enumerated factors as well as any other relevant factors. No single factor is dispositive, and "[t]he degree of importance of each factor varies depending on the requesting spouse's facts and circumstances." Rev. Proc. 2013-34, sec. 4.03(2); see Pullins v. Commissioner, 136 T.C. at 448; Hall v. Commissioner, T.C. Memo. 2014-171, at *38.

### 1. Marital Status

If the requesting spouse is no longer married to the nonrequesting spouse, this factor will weigh in favor of granting relief. See Rev. Proc. 2013-34, sec. 4.03(2)(a). If the requesting spouse is still married to the nonrequesting spouse, this factor is neutral. Id. As petitioner and intervenor were divorced before respondent's final determination, this factor favors petitioner.

### 2. Economic Hardship

Economic hardship exists if satisfaction of the tax liability, in whole or in part, would result in the requesting spouse's being unable to meet his or her reasonable basic living expenses. Id. sec. 403(2)(b). If denying relief from joint and several liability will not cause the requesting spouse to suffer economic hardship, this factor will be neutral. Id. Petitioner concedes that she will not suffer economic hardship if she is denied relief for 2012. This factor is neutral.

**[\*20]**      3.      <u>Knowledge</u>

In an underpayment case knowledge exists when the requesting spouse knew or had reason to know the nonrequesting spouse would not or could not pay the tax liability when the joint return was filed or at a reasonable time thereafter. <u>Id.</u> sec. 4.03(2)(c)(ii).  This factor will weigh in favor of relief if the requesting spouse reasonably expected the nonrequesting spouse to pay the tax liability reported on the return.  <u>Id.</u>  This factor will weigh against relief if, on the basis of the facts and circumstances, it was not reasonable for the requesting spouse to believe the nonrequesting spouse would or could pay the tax liability reported on the return.  <u>Id.</u>  For example, if before the return was filed, the requesting spouse knew of the nonrequesting spouse's prior bankruptcies, financial difficulties, or other issues with the Internal Revenue Service or other creditors, or was otherwise aware of difficulties in timely paying bills, then this factor will generally weigh against relief.  <u>Id.</u>

Petitioner was aware of intervenor's difficulties in timely paying bills and other financial difficulties when she signed the 2012 joint return--April 15, 2013. Indeed, petitioner took over managing the joint bank account in August 2012, eight months before signing the 2012 joint return, because she had received several overdraft notices.  Before 2012 petitioner and intervenor applied for a

[*21] second mortgage, and petitioner discovered that intervenor had unilaterally taken out a line of credit on the family home. Additionally, before August 2012 petitioner's employee discount from the telephone company was suspended because intervenor had failed to keep sufficient funds in his separate bank account to pay their phone bill.

Because petitioner was aware of intervenor's financial difficulties and previous failures to pay bills, she could not reasonably have expected intervenor to pay the tax liability reported on their 2012 joint return. Additionally, because petitioner had taken over managing their joint bank account, she would have been in a better position to know whether they could or would pay the 2012 tax liability or needed to set up an installment agreement to pay the tax. This factor weighs against granting relief.

### 4. Legal Obligation

This factor favors relief where the nonrequesting spouse has the sole obligation to pay an outstanding Federal tax liability under a binding divorce decree or other legally binding agreement. Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402. This factor is neutral where both spouses have such an obligation or the divorce decree or agreement is silent as to any such obligation.

**[\*22]** Id. Petitioner and intervenor's divorce decree is silent on this point. Accordingly, this factor is neutral.

### 5. Significant Benefit

Under this factor the Court considers whether the requesting spouse received a significant benefit, beyond normal support, from the underpayment. Id. sec. 4.03(2)(e). Normal support is measured by the circumstances of the particular parties. Porter v. Commissioner, 132 T.C. at 212. Benefits in excess of normal support carry less weight, however, where the nonrequesting spouse controlled the household or business finances, making this factor neutral. Rev. Proc. 2013-34, sec. 4.03(2)(e). This factor will weigh in favor of granting relief if the nonrequesting spouse significantly benefited from the unpaid tax and the requesting spouse had little or no benefit or the nonrequesting spouse enjoyed the benefit to the requesting spouse's detriment. Id.

Petitioner did not receive a significant benefit beyond normal support from the underpayment in 2012. However, intervenor enjoyed the benefit of the unpaid tax to petitioner's detriment. Intervenor spent significant funds to buy cars and car parts for his car hobby. He also regularly spent Fridays in 2012 gambling. This factor favors petitioner.

**[\*23]**     6.     <u>Compliance</u>

The parties agree that petitioner is currently in compliance with her Federal income tax obligations.  Therefore, this factor favors petitioner.

7.     <u>Health</u>

This factor may weigh in favor of relief if the requesting spouse was in poor mental or physical health when the tax returns in issue were filed, when the request for relief was made, or at the time of trial.  <u>Id.</u> sec. 4.03(2)(g), 2013-43 I.R.B. at 403; <u>see also</u> <u>Pullins v. Commissioner</u>, 136 T.C. at 454.  If the requesting spouse was in neither poor physical nor poor mental health, this factor is neutral.  Rev. Proc. 2013-34, sec. 4.03(2)(g).  The parties agree that petitioner was not in poor physical or poor mental health at any of those times.  Thus, this factor is neutral.

D.     <u>Conclusion on Section 6015(f) Relief for 2012</u>

Although many of the factors for equitable relief either favor petitioner or are neutral, petitioner could not reasonably believe that intervenor would or could pay the tax liability reported on their 2012 return.  The knowledge factor weighs too heavily against her for the Court to allow relief for 2012.  Weighing all the facts and circumstances, the Court concludes that petitioner is not entitled to relief from joint and several liability under section 6015(f) for 2012.

**[*24]** III.    <u>Conclusion</u>

Petitioner is entitled to relief under section 6015(c) for 2011 but is not entitled to relief under section 6015(b), (c), and (f) for 2012.

The Court has considered all the other arguments of the parties, and to the extent not discussed above, finds those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.
